[Crim. No. 2290. In Bank.—May 20, 1920.]

## In re EARL WILLIAMS on Habeas Corpus.

[1] Criminal Law—Trial for Public Offense—Complaint.—It is essential to the jurisdiction of a police court to put a person upon trial for a public offense that there should be on file therein a complaint charging such person with the commission of such offense.

[2] Id.—Conviction in Police Court—Existence of Complaint—Evidence.—In this proceeding in *habeas corpus* to procure the discharge of the petitioner after his conviction of vagrancy in the police court of the city and county of San Francisco, the evidence is held insufficient to show that no complaint was filed against the petitioner, although there was no record thereof.

[3] Habeas Corpus—Want of Trial—Burden of Proof.—In a proceeding in *habeas corpus* to procure the discharge of a person convicted of a crime on the ground that no trial was had and no evidence introduced in support of the charge, the burden of proof is on the prisoner to establish the allegations of his petition.

[4] ID.—SUFFICIENCY OF EVIDENCE—QUESTION NOT REVIEWABLE.—In a *habeas corpus* proceeding, the court cannot enter into any inquiry as to the sufficiency of the evidence to support a finding of guilt.

[5] ID.—CONVICTION IN POLICE COURT—WANT OF TRIAL—INSUFFICIENCY OF EVIDENCE.—In this proceeding in *habeas corpus* to secure the release of the petitioner after his conviction of vagrancy in the police court, the evidence is held insufficient to show the alleged want of trial and failure to introduce evidence in support of the charge.

PROCEEDING in *Habeas Corpus*. Writ discharged and prisoner remanded.

The facts are stated in the opinion of the court.

Raine Ewell for Petitioner.

Isadore Golden for Respondent.

THE COURT.—This is a proceeding in *habeas corpus*.

The prisoner was confined in the county jail of the city and county of San Francisco under a commitment from the police court showing his conviction therein of vagrancy, and a judgment based thereon of thirty days' imprisonment. The writ of *habeas corpus* was issued by us upon a petition alleging that no complaint was ever filed against petitioner in said court, that no trial was had and no evidence introduced in said court in support of any charge against him, and that he was denied all opportunity to obtain witnesses to disprove any claim that he was guilty of vagrancy.

[1] It goes without saying that it is essential to the jurisdiction of a police court to put a person upon trial for a public offense that there should be on file therein a complaint charging such person with the commission of such offense. Prisoner's case in this behalf rests solely upon the fact that no complaint charging him with a public offense can be found, or, indeed, that any such complaint has been seen, so far as the evidence shows, at any time since the day on which he was convicted. It appears that it is the practice in the police court to there hold the complaint until the case is disposed of, and then to deliver the same to a department of the county clerk's office, where it remains as a part of the files of the office. Apparently no record

whatever is kept of the fact of the filing of a complaint, which usually is sworn to before the police judge and delivered by him to the clerk of the court, a deputy county clerk, who thereupon indorses the same as filed. If, perchance, the complaint is subsequently abstracted or lost, no record of there having been any complaint whatever remains. In a matter involving the personal liberty of individuals the practice is, to say the least, not to be commended. However, as against the failure to show the complaint itself, or any record thereof, or record of the fact of the filing thereof, there is parol evidence tending to show that a complaint was in fact filed in the prisoner's case. The prisoner was arrested without a warrant and booked at the city prison for vagrancy. A daily docket sheet of the arrested persons assigned to a department of the police court is made up and delivered to the deputy clerk of that department, and on this sheet, which apparently constitutes the record of the court for the day, but which is made up and delivered to the clerk entirely regardless of whether any complaint has been filed in any of the cases enumerated thereon, the clerk notes the disposition of each case. The case of the prisoner was shown upon such a sheet, this record showing conviction and judgment. The deputy clerk testified positively that in all cases in which no complaint is ever filed, which sometimes happens when the arrested person is dismissed without trial, a note to that effect is made, and that the fact that no note was here made as to the absence of a complaint shows positively that there was a complaint on file. He further testified that he would not have delivered a commitment in this case unless there had been a complaint filed prior to the delivery of the commitment. The police judge testified substantially that he had no independent personal recollection of this particular case. He further testified substantially that in accord with the practice obtaining in his court a complaint would have been duly sworn to and filed before the trial. The arresting officer testified positively that in this particular case he swore to a complaint before the police judge in open court on the morning of the trial, leaving the same with the judge, and the clerk of the court testified that he saw such a complaint. In addition there is, of course, a presumption

that official duty has been duly performed. [2] In view of all the circumstances we do not feel warranted in holding that no complaint was filed in this case.

As to the alleged want of trial, failure to introduce any evidence, and denial of opportunity to procure witnesses on his own behalf, the evidence is conflicting. The prisoner who had been out on bail testified substantially that all there was to his so-called trial was that his name was called and the judge asked him substantially if he had anything to say, and he told him that he was working for the "News" (a daily newspaper), that the judge then said that would do, and it would be thirty days; and that he then asked the judge to give him time to obtain witnesses who would testify that he was working, and the judge told him that if he said another word he would make it sixty days. He is corroborated to some extent by certain witnesses. Of course, whatever a proceeding of this kind might be styled it would not be the "trial" to which every accused party is entitled, and it could not be tolerated by any respectable court. [3] On this matter, however, the burden of proof was necessarily on the prisoner. Unquestionably the arresting officer went upon the witness-stand, and it sufficiently appears that he gave the judge some information about the case. He testified here that he was duly sworn before giving his testimony. [4] We cannot in this *habeas corpus* proceeding enter into an inquiry as to the sufficiency of his testimony to support a finding of guilt. That was a matter available to the prisoner on an appeal to the superior court. The police judge testified before us and denied each and all of the claims of the prisoner in regard to the proceedings on the trial. [5] The testimony in this regard is not such as to satisfy us that there was in fact no trial.

It was suggested on the argument that somewhat summary methods of disposing of business in the police court are essential to a dispatch of the great number of cases coming on daily therein. This may be conceded, and it might be admitted also that in all courts it should be the aim to dispose of business as quickly as is consistent with the proper and careful administration of justice. But however summary the methods adopted in any court, there are certain rights guaranteed by our constitution to one charged with

any crime, entirely regardless of his station in life. These rights are as sacred and inviolable in the police court as in the highest court of the land, and must necessarily be observed therein. Indeed, when we consider the greater opportunity for the disregard of those rights in the police court of a large city dealing in large part as it does with cases of individuals who by reason of their lack of means, friends, and lack of knowledge are almost entirely dependent upon the court for impartial investigation and disposition of their cases, it would seem that a greater measure of care on the part of the judge of such a court to see that every right of the defendant is carefully guarded is essential than in a higher court where the defendant is represented by counsel who can ordinarily be relied upon to protect his rights.

It was because the prisoner alleged facts tending to show a disregard of some of those' rights and a denial of due process of law that we issued the writ. But the showing before us is not sufficient to convince us that the proceedings in the police court were actually as alleged, and without a convincing showing, we are not justified in avoiding what purports to be the result of a regular judicial determination.

The writ is discharged and the prisoner remanded.

Angellotti, C. J., Shaw, J., Lennon, J., Olney, J., and Wilbur, J., concurred.

LAWLOR, J., Dissenting.—I dissent. Did the police court acquire jurisdiction by the filing of a complaint against the petitioner? If none was filed the proceeding was wholly void, and concededly the petitioner should be discharged. It is admitted that no complaint could be found at the time of the hearing. Parol evidence was, however, introduced to the effect that prior to the case being called a complaint had been filed. Police Officer William J. Harrington, who arrested the petitioner, testified that a complaint was drawn in the office of the bond and warrant clerk; that he swore to it before the judge in open court; and that he left it on the judge's desk. The judge's testimony on this point was that he had no independent recollection of a complaint, and the official who, it is claimed, framed the pleading, was not produced as a witness. The clerk of the court testified

that he had seen a complaint during the proceedings, although in another part of his examination he stated: "I don't remember of no complaint except what is on the calendar sheet." I have reached the conclusion that the clerk was not speaking from recollection, but based his testimony on the custom followed in the police court. This witness called attention to the absence from the loose "docket sheet" of the notation, "no complaint filed," which he said was customarily stamped opposite the title and number of the cause, as they appeared on such sheet, whenever a complaint had not been filed. But, however that may be, the fact remains that no entry of a complaint appeared on the "docket sheet"—which represented the only "minutes" kept by the clerk. Officer Harrington further testified that he saw a complaint in the superior court during the hearing of a similar writ, but that he did not "know what the custom is, whether to bring the original or a copy." He was finally asked whether, so far as he knew, the last time he saw the complaint was not when he swore to it and placed it on the judge's desk, and he answered: "Yes, sir." Attached to the return of the chief of police in the superior court is a printed form of complaint purporting to charge the petitioner with the commission of each of the eleven acts denounced as independent crimes in section 647 of the Penal Code. The names of the petitioner, the complaining witness, and the judge of the police court, and the date it is alleged the specified offenses were committed, are filled in in typewriting. This paper is not certified by the county clerk, the *ex-officio* clerk of the police court, and the custodian of its records. The return does, however, contain this language: " . . . a copy of which complaint is hereunto annexed and the original thereof produced and exhibited to this court." But no one having knowledge whether an original complaint or a copy thereof was actually "produced and exhibited" in the superior court was called to testify, nor was any attempt otherwise made to confirm or negative Officer Harrington's testimony in that regard. It may be mentioned in passing that the cases of nine other men were before the court at that time, and that no complaint was produced in any of them.

The prevailing opinion relies in part on the presumption
that "official duty has been duly performed." This is a
disputable presumption which, unless overcome by other
evidence, must prevail. (Subd. 15, sec. 1963, Code Civ.
Proc.) But has this rule of presumption any application
where the jurisdiction of a court of inferior or limited
jurisdiction is called in question? In this respect a distinc-
tion is to be drawn between the acquiring of jurisdiction
and the proper exercise thereof. The rule of evidence
where the jurisdiction of inferior court is questioned is thus
stated in 15 Corpus Juris, at page 832: "The mere exercise
of jurisdiction by courts of inferior, limited, or special
jurisdiction, does not raise a presumption of the existence
of the requisite jurisdictional facts, for nothing is pre-
sumed to be within the jurisdiction of such courts." It is
also said in the same volume at page 842: "There being no
presumption in favor of the jurisdiction of a court of in-
ferior, limited, or special jurisdiction, it is usually considered
necessary, in order to sustain the proceedings of such a
court, that the record should affirmatively show that the court
had jurisdiction." Among the cases cited in support of the
above text is *Ex parte Kearny*, 55 Cal. 212, wherein the
petitioner was discharged on *habeas corpus* on the ground
that the complaint did not state facts sufficient to con-
stitute a public offense. It was said in that case at page
214: "The police court of the city and county of San Fran-
cisco is an 'inferior court' of limited jurisdiction, whose
powers are conferred, and whose duties and mode of pro-
cedure are prescribed, by statute, and to which the rule
applies that the evidence, of its proceedings must af-
firmatively show jurisdiction of the person of the defend-
ant, and over the subject matter." The same rule would, of
course, apply where there is no complaint at all. The re-
spondent sets up in his return a "commitment"—which pur-
ports to be a "copy," although it is not certified—but, as
the issuance of a commitment is an act in the exercise of
jurisdiction, and jurisdiction must be affirmatively shown in
the case of a court of inferior or limited jurisdiction, it
must affirmatively appear that jurisdiction was conferred by
the filing of a complaint. (Pen. Code, sec. 1426.) In my
opinion, where the jurisdiction of such a court, particularly

CLXXXIII—2

where life or liberty is involved, is in issue, and especially where it is sought to establish that jurisdiction by parol, the proof must be of the clearest and most convincing character. The law requires, justice demands, and the courts should see to it that the individual is not put to trial unless it plainly appears that the court has jurisdiction to act. In the determination of this question it is not enough that the evidence may tend to show that a complaint was filed or that it may be involved in conflict. We must carefully weigh the evidence and give to it the force to which it is entitled. Speaking as one of the triers of the fact, I am convinced from the evidence, upon whichever side the burden of proof may rest, that the petitioner was sentenced by a court which had never acquired jurisdiction by the filing of a complaint.

I am also convinced from the evidence that the proceedings in the police court did not, either in form or substance, constitute a trial, "according to prescribed forms and in accordance with the general rules for the protection of individual rights." (*Kalloch* v. *Superior Court,* 56 Cal. 229, 240.) In reaching this conclusion I have not failed to observe the distinction between the absence of a trial which would involve a violation of constitutional 'guaranties, and the erroneous exercise of jurisdiction in the course of a trial the remedy for which would be by appeal. Nor have I considered whether the prisoner was guilty of any or all of the eleven acts specified in the printed form of complaint already alluded to.

The police court of the city and county of San Francisco is the creation of the municipal charter thereof, but also has jurisdiction in crimes prescribed by the state. The legislature, in title XI, Part II, of the Penal Code, has provided a special form of procedure in criminal offenses in justices' and police courts: "Police courts" include "Police judges' courts." (Section 1461.) Jurisdiction is acquired by the filing of a complaint. (Section 1426.) The minutes of the action and proceedings must be kept in a docket. (Section 1428.) In arraigning the accused, and in the receiving and recording of the plea, the same procedure is required as in the case of an indictment. (Section 1429.) If a jury is not waived, the charge must be tried by jury, otherwise by the court. (Sections 1430 and 1435.) Either party may, upon

good cause shown, have a reasonable postponement. (Section 1433.)   After a plea or verdict of guilty the court must appoint a time for rendering judgment, which must be not more than two days or less than six hours after the plea or verdict, unless the defendant waive the postponement. (Section 1449.)   "At any time before judgment, defendant may move for a new trial. . . . "   (Section 1450.)   The judgment must be entered in the minutes of the court. (Section 1453.)   A *certified* copy of the judgment must be delivered to the sheriff.   (Section 1455.)

The petitioner should have been tried, therefore, under the above procedure, and yet there was a palpable disregard of practically every one of the foregoing provisions.   I shall find it necessary, in order adequately to describe the proceedings, to state what was done in the cases of the nine other men—which were before the court and were disposed of at the same time—for the reason that, if it could be said there was an attempt to conduct a hearing, there was at most a single hearing.   What happened was this: The petitioner had been released on $25 cash bail and was in the body of the courtroom when the proceedings began.   The other nine men were brought from the dock and lined up before the judge.   Officer Harrington was sitting in a chair "right alongside" the judge's desk.   To my mind the weight of the evidence is against the testimony of Officer Harrington that he was sworn as a witness.   The judge did not remember and the clerk was not questioned as to whether Officer Harrington or anyone else was sworn.   Charles T. Kelley, who was present, testified that Officer Harrington was not sworn, and Wells Fadden, one of the nine men stated: "When I come up I don't knew whether he was sworn."   It was not testified that any other witness was sworn in any of the ten cases.   I shall hereafter have occasion to refer to the "docket sheet," wherein petitioner is designated as a witness.   At any rate, while the nine men were standing in the presence of the judge, and while the petitioner was making his way to take his place in line— his name being the last called, the judge asked Officer Harrington: "What about these men?"   The substance of the reply was that they were vagrants and had been "hanging around Third and Market."   The judge thereupon proceeded to ask each man successively: "What have you to say for

yourself?'' Wells Fadden answered that he was employed by the Santa Fe, but it does not appear that any of the others made a reply to the judge's questions, and it is not claimed that, any further inquiry was made into the question of their guilt or innocence. Eight of the men were given ''twenty-four hours to leave town,'' and Wells Fadden was convicted. As already noted, petitioner's case was the last called, and there is some conflict in the testimony as to what was done. Charles T. Kelley testified that the petitioner did not take his place with the others until after eight of the cases had been disposed of; that he did not hear Officer Harrington ''say anything after the first review of the men that was brought up''; that Officer Harrington gave no testimony after the petitioner had taken his place at the bar; that no other testimony was taken in any of the ten cases; and that in answer to the judge's question: ''What have you to say for yourself?'' ''The petitioner said he was working . . . Then the judge gave him thirty days, and petitioner said to him, 'I am working on the ''Daily News,'' ' and the judge said, 'If you say anything more I will make it sixty days,' and the incident was closed.'' The petitioner gave this version: ''The judge asked me what I was doing when I was arrested. I told him I was on my way to work and he said, 'That's enough; thirty days.' I said, 'If you will give me till to-morrow morning, I can get witnesses here to prove that I am working,' and the judge said, 'If you say anything more I will give you sixty days. Sit down there.' . . . Not to my knowledge, Harrington didn't say anything while I was up. . . . I can't say positively, but I didn't hear him. . . . The charge was not explained to me.'' When Wells Fadden was asked, ''What happened in the case of Earl Williams?'' he answered: ''They called his name. He come up, and the officer testified. . . . He said he was a vagrant and had been hanging around Third and Market. That is all I heard. Q. What happened? A. 'I find you guilty. County Jail, thirty days.' . . . Williams asked the judge if he could put the case over until he could consult with his employer, and the judge says, 'If you say anything more, I will give you sixty days,' and he sat down.'' This is Officer Harrington's testimony: ''Q. Were you sworn as a witness? A. Yes, sir. . . . I said to the judge that I had arrested this man previously on six different occasions; that

I had a complaint from my captain about him begging on
Third street, and that he was a dope user, and I had
arrested him several times with fiends in the southern dis-
trict, and it seems that before this time I had no special
complaint about him, but this time I had a complaint by a
business man on Third Street.'' The judge's testimony was
as follows: ''So far as the facts of the case and the trial are
concerned, I do not remember them. . . . Q. Do you recall
whether or not you administered an oath to Mr. Harrington
before he testified in the case? A. As far as that as an
independent fact I do not recall, except that I administer an
oath when a witness goes on the stand. Q. Do you recall
Officer Harrington testifying in that case? A. I do. I recall
very distinctly, but as to all his testimony, I don't remem-
ber. Q. Do you recall anything as to his testimony about
this man Williams? A. . . . I will have to say no, I don't.
. . . Q. The statement made yesterday of what happened
was this in substance: That ten cases of vagrancy were
called, and the case of Earl Williams was the last on the
list; that nine of these men were in the dock while Earl
Williams was in the audience, having been released on bail;
that as nine of the ten cases were called, nine men came
out of the dock and were lined up in front and Earl Will-
iams was making his way out of the audience up to join
them; that you went through the list of these men and dis-
charged all but one, who was sent back into the dock con-
victed; that no testimony whatever was asked for in connec-
tion with Earl Williams as he got before you, and you asked
him what he had to say for himself, and he replied in sub-
stance that he was employed on the 'Daily News,' and you
said, according to the testimony here, 'That is enough to
hear from you; thirty days. Now, let's see what the ''News''
can do for you,' and he said, 'Judge,' something to the
effect that might he have an opportunity to show that he was
employed on the 'News,' and you said to him that if he
said anything more it would be sixty days, and that practi-
cally all this took place in the courtroom as far as this
particular case was concerned. . . . A. I say that is ab-
solutely not true, because I have never convicted men on
such evidence. It is not my custom down there, and I
have never convicted men on any such testimony.''

If it is to be insisted that what took place in the police court constituted a trial according to the law of the land, then, in my opinion, it may justly be said that there is very little left of our boasted constitutional guaranties that one accused of crime shall have a full and fair hearing before being deprived of life or liberty. I do not think that any one of the constitutional requirements of a trial was observed in this case. The petitioner was not asked whether he had counsel, if he desired the aid of counsel, or if he was ready to proceed to trial. No complaint was produced, there was no arraignment, no taking of a plea—unless the inquiry of the judge as to what petitioner had to say for himself can be said to call for a plea, and, except for what appears in the "docket sheet," no "minutes" of proceedings on arraignment were entered. Petitioner was not asked if he waived a trial by jury—one of his fundamental rights—and it is not pretended that it can be ascertained from the records of the police court whether he was proceeded against—if proceeded against at all—alone or in conjunction with the other men. He was not asked if he was ready to proceed to judgment, and no time was appointed therefor. He was not arraigned for judgment, and no inquiry was made whether he had any cause to show why judgment should not be pronounced upon him. On a charge of vagrancy evidence as to employment is always admissible, and yet petitioner's request for a postponement, in order—as he claimed—to produce his employer as a witness, was denied. Whatever the judge said to the petitioner in this connection—and undoubtedly he made some remark after sentence was pronounced—I am satisfied that in no true sense was the petitioner given a "trial."

Even if it be proper to hold in this connection that the testimony on behalf of the respondent may be aided by a presumption of regularity based on the record of the police court, nevertheless the only evidence of a record is the "minutes" in the "docket sheet," which is a printed, unbound page with certain captions, opposite which appear the following entries:

"Offense: Vagrancy.

"Released or in custody: $25.00 bail.

"Plea: Not guilty.

"Arresting officers: Harrington and posse.

"Proceedings: Guilty.

"Witnesses: Defendant and Harrington.

"Judgment: 30 days."

Clearly, this record cannot be said to contain any "minutes" of the required statutory steps which I have enumerated, and it cannot be determined therefrom what did take place during the proceedings. The loose "docket sheet" may have some merit as a work-saving device, but it could have no other virtue.

If the petitioner were relying here on any one of the indicated departures from the prescribed mode of trial, it might be held that the police court merely erred in the exercise of jurisdiction, and that relief must be sought by appeal. But, in my opinion, even if the police court had acquired jurisdiction by the filing of a complaint, the failure to observe so many essentials of a trial would cause the jurisdiction to lapse and leave the police court without jurisdiction to render a judgment.

It might be assumed from the proceedings that in the case of a "drug addict" or "vagrant" it is not necessary to observe the constitutional requirements of a trial. There is no such discrimination in the law. Indeed, the greater the demoralization of the accused, the more need there is, it would seem, to conserve his rights. I do not think these proceedings should be given the sanction of this court or be accepted as a sufficient compliance with constitutional mandates. It is not enough to moralize on the showing that has been made before us; the proceedings should be condemned as a perversion of law.

I am strongly of the opinion that the petitioner should be discharged on the grounds, first, that no complaint had been filed, and, second, that there was no trial before judgment.