[Crim. No. 1761.   Third Dist.—April 28, 1941.]

In re BOYD COON et al., on Habeas Corpus.

532

Gladstein, Grossman, Margolis & Sawyer for Petitioners.

Earl Warren, Attorney-General, J. Q. Brown, Deputy Attorney-General, Raymond Dunne, District Attorney, Maxwell M. Willens, Assistant District Attorney, and H. C. Stanley, Assistant City Attorney, for Respondent.

THE COURT.—Petitioners were found guilty by a jury in the Police Court of Stockton, of a violation of section 87 of the Penal Code. Judgments were duly entered as to each, that they should be confined in the county jail for one hundred eighty days on Count One, and one hundred eighty days on Count Two of the complaint, pay a fine of $250 on the Third Count, and $250 on the Fourth Count. Upon appeal to the superior court by petitioners, the conviction was affirmed, but the judgment was modified by striking out

the sentence imposed under all counts except Count One. All of the defendants in said actions now contend that the said conviction can and should be nullified by means of this proceeding in *habeas corpus*.

On the 6th day of January, 1940, Governor Olson called a special session of the legislature to consider an act upon relief matters and to make appropriations for the relief of hardship in the State of California. During this session, pursuant to Assembly House Resolutions No. 9 and No. 29 (attached to the record as Exhibits No. 1 and No. 2), the Assembly appointed a committee of its members for the purpose of investigating, surveying and studying in detail the entire problem of relief of hardship and destitution. This committee was authorized to hold public hearings and subpoena witnesses, and in addition, under House Resolution No. 29, were authorized, in the words of the resolution, "to have the power to investigate and report upon the extent to which the activities of groups, and organizations, which include among their members persons who are either employees of the State Relief Administration, or who are receiving relief, affect the cost of the administration of unemployment relief, and to recommend such legislation in connection therewith as the committee may deem necessary or advisable."

Pursuant to these resolutions, the committee met in the city of Stockton and examined numerous witnesses. Nineteen of the witnesses who appeared before this committee, upon being first duly sworn to testify, refused to answer questions propounded to them relative to their communistic activities or affiliations. Subsequently, complaints were filed against these nineteen witnesses for violations of section 87 of the Penal Code, which provides:

"Every person who, being present before either House of the legislature or any committee thereof, wilfully refuses to be sworn or to answer any material and proper question . . . is guilty of a misdemeanor."

The contention of petitioners is that they were denied due process of law in violation of the Fourteenth Amendment of the Constitution of the United States, and that *habeas corpus* may be resorted to as a remedy under such circumstances. They urge that all or any of the following questions may be raised upon this proceeding:

The complaints do not state a public offense, and are deficient in other particulars;

The court refused to grant challenges for cause based upon bias and prejudice;

The court refused to grant a motion for change of venue;

The court refused to issue a *subpoena duces tecum* for witnesses residing outside the county.

■ As to the first question mentioned, it is clearly the law that it can properly be raised on this proceeding. (*Ex parte Williams,* 121 Cal. 328 [53 Pac. 706]; 13 Cal. Jur., p. 232, sec. 14.)

■■ The other questions all relate and arise out of the ruling of the court adverse to petitioners. In other words, they involve errors of law committed at the trial. None of them is based upon facts and circumstances not arising out of, or presented at the trial. In respect to such questions, the rule is found in 13 Cal. Jur., page 236, section 17, where it is said:

"The function of the writ of *habeas corpus* is not to serve the purpose of an appeal, so that a prisoner cannot predicate as grounds for discharge errors of law committed by a trial court. Thus, the erroneous refusal of a lower court to change the venue upon the ground of bias and prejudice on the part of the trial judge, or the denial by a justice's court of statutory rights which may be waived by defendant, are mere errors not going to the question of jurisdiction, and may not be inquired into on habeas corpus. Likewise, the writ does not lie because of error in disregarding the plea of once in jeopardy, for the improper admission of evidence, or for error in the failure to inform the defendant of his rights. Nor does error in rendering the judgment, or defects in the form of the judgment, afford grounds for the operation of the writ."

In the case of *In re Martin,* 132 Cal. App. 64 [22 Pac. (2d) 269], forty specific grounds were advanced for the issuance of a writ of *habeas corpus.* Among them were accusations of fraud, conspiracy, corruption and impure motives on the part of the district attorney's office, the witnesses for the prosecution, a former attorney for the defense and certain insurance companies; others in their nature were an attack upon the integrity of the trial judge, the jury and the court reporters; a number involved alleged errors of law which it is

claimed were committed during the trial of the action; and several pertained to the weight of testimony and the credibility of certain witnesses, alleged misconduct of the district attorney, and the legal sufficiency of the evidence to support the verdict of the jury. In denying the application, the court carefully reviewed the decisions of this state relating to the scope of the inquiry upon *habeas corpus,* in the following language:

"As held in the cases hereinafter cited the function of a writ of *habeas corpus* is to inquire into the jurisdiction of the court from whence the process is issued under which the accused is being held. (*In re Vitalie,* 117 Cal. App. 553 [4 Pac. (2d) 171].) It cannot be made the vehicle for the consideration of alleged errors where a conviction has been had and the commitment thereon is in due form; nor to subserve the office of a motion in arrest of judgment (*In re Stambaugh,* 117 Cal. App. 659 [4 Pac. (2d) 270]; nor can it be used as a means of considering the question of the insufficiency of the evidence. (*In re Horr,* 177 Cal. 721 [171 Pac. 801]; *In re Williams,* 183 Cal. 11 [190 Pac. 163]; *In re Gutierrez,* 46 Cal. App. 94 [188 Pac. 1004]; *In re Jacobs,* 175 Cal. 661 [166 Pac. 801]; *In re Kaster,* 52 Cal. App. 454 [198 Pac. 1029]); nor for the purpose of reviewing errors alleged to have been committed in the course of the trial (*Ex parte Lehmkuhl,* 72 Cal. 53 [13 Pac. 148]; *Ex parte Noble,* 96 Cal. 362 [31 Pac. 224].) Furthermore, the affirmance on appeal of a judgment of conviction operates as a final adjudication against the appellant of all questions raised by the assignments of error or which could have been so raised. (*In re Cohen,* 107 Cal. App. 288 [290 Pac. 512]; *France* v. *Superior Court,* 201 Cal. 122 [255 Pac. 815, 52 A. L. R. 869].) "

The identical language appears in *In re Cutler,* 1 Cal. App. (2d) 273 [36 Pac. (2d) 441] (hearing in Supreme Court denied). It must be remembered that petitioners availed themselves of the right of appeal, and that all of such questions, according to petitioners, were presented for determination a *second* time to the superior court.

To meet this situation, so far as our own jurisdiction is concerned, petitioners rely upon the case of *Mooney* v. *Holohan,* 294 U. S. 103 [55 Sup. Ct. 340, 79 L. Ed. 791, 98 A. L. R. 406]. There, the defendant had been convicted of murder in the first degree in this state, and his conviction was affirmed upon

appeal to the Supreme Court (*People* v. *Mooney,* 177 Cal. 642 [171 Pac. 690]). Thereafter defendant asked leave of the Supreme Court of the United States to file a petition for an original writ of *habeas corpus.* He charged that he was held in confinement without *due process* in violation of the Fourteenth Amendment of the federal Constitution, by reason of the fact that he had *been convicted upon perjured testimony which was knowingly produced by the prosecuting officials.* The court held, in effect, that *habeas corpus* was the proper remedial course for defendant to pursue, but denied the writ upon the ground that Mooney had not exhausted his judicial remedy under the laws of California. Upon subsequent application to the Supreme Court of this state, a writ of *habeas corpus* was denied.

We are unable to agree with petitioners when they urge that mere errors of law, arising out of rulings of the court at the trial, come within the due process clause, nor do we believe that the Mooney case, in so far as such matters are concerned, alters the rule which prevails in this state, and to which we have alluded. In the Mooney case the facts which were used as a basis for an application for the writ did not arise out of anything which took place during the course of the proceedings, and upon which the trial court was given the opportunity to rule. Such facts arose outside the record, and the attack involved the *good faith* of those prosecuting the case. The United States Supreme Court held that, to be entitled to the writ, and to come within the due process clause, it was incumbent upon the defendant to prove not only that perjured testimony was used, but that the prosecuting officials *knowingly* used it. The Supreme Court of this state, in *People* v. *Mooney,* 178 Cal. 525 [174 Pac. 325], where a certificate of probable cause was sought to stay the execution of the defendant upon the ground of misfeasance and fraud upon the part of the district attorney, it was held that such an attack should have been made upon motion for new trial or appeal. *It thus appeared that there was no available remedy under the laws of this state which the defendant could pursue.* This was the situation when the application for *habeas corpus* was made to the United States Supreme Court. The contention of the defendant had never been adjudicated by any court of this state, by reason of the fact that there was no existing procedure whereby that could

be accomplished. Herein lies the distinction between that case and the one under consideration. Here, the questions raised were actually and admittedly presented, under appropriate procedural statutes and the decisions of our courts, and were actually passed upon by both the trial court and the superior court on appeal. If the theory of petitioners here were carried out to its logical conclusion, every adverse ruling in a criminal trial could be made the basis for a charge of a violation of the due process clause, and all of such cases would then be within the jurisdiction of the Supreme Court of the United States. We do not believe that court ever intended to lay down such a rule and expand the scope of the due process clause to such an unlimited extent.

Petitioners, in the same manner, seek to extend the definition of "jurisdiction" so that where adverse rulings of the character mentioned above are made, it is an act of the court in excess of its jurisdiction, if such ruling is erroneous. The recent case of *Abelleira* v. *District Court of Appeal*, 17 Cal. (2d) 280 [109 Pac. (2d) 942], is relied upon by petitioners. That case merely holds that where a court purports to act under the authority of a particular statute but acts contrary thereto, it acts in excess of its jurisdiction and *certiorari* will lie. The District Court of Appeal, when the writ was issued, had under submission an application for a writ of *mandamus*, arising out of the question of the right of the California Employment Commission to make certain payments to individuals who claimed to be entitled thereto. Pending the final determination of the matter, and for the sole purpose of preserving the *status quo*, this court restrained the commission from paying out such funds. Before this court had the opportunity to dispose of the attack upon its own jurisdiction, the Supreme Court decided it for us, upon the ground that we had no jurisdiction to decide whether or not we ourselves had jurisdiction. In undertaking to define the word "jurisdiction", after rejecting all "fundamental" definitions, the Supreme Court concludes with the pronouncement that, "As a practical matter, *accuracy in definition is neither common nor necessary.*" In spite of the foregoing, we cannot see how that case can be said to lay down a rule which says that the act of the trial court, in *ruling* upon legal questions such as we have here, is a jurisdictional matter. If the trial court was mistaken in its rulings, it was, at the

most, error committed in the exercise of its jurisdiction. The fundamental rule governing the situation (for we still cling to fundamentals), as found in 15 C. J., pages 729, 730, section 14, is stated as follows:

"Since jurisdiction is the power to hear and determine, it does not depend either upon the regularity of the exercise of that power, or upon the correctness or rightfulness of the decision made, for the power to decide necessarily carries with it the power to decide wrongly as well as rightly, subject to the qualification that the court can render only such judgment as does not transcend in extent or character the law which is applicable to that class of cases."

Coming to the question of the alleged failure of the complaint to state a public offense, we believe that it is not vulnerable to the attack made upon it by petitioners, and that it complies substantially with the provisions of section 1426 of the Penal Code, which reads as follows:

"All proceedings and actions before a justice's or police court, or a municipal court, for a public offense of which such courts have jurisdiction, must be commenced by complaint under oath, setting forth the offense charged, with such particulars of time, place, person, and property as to enable the defendants to understand distinctly the character of the offense complained of, and to answer the complaint. In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. In charging theft, it shall be sufficient to allege that the defendant unlawfully took the labor or property of another."

Numerous objections to the complaint are made. First, it is contended that section 303 of the Political Code, dealing with contempt before legislative committees, is applicable. The pertinent portion of that section reads as follows:

" . . . provided, however, that if any such contempt be committed before such committee during the session of the legislature, said committee shall report the contempt to the

Senate or Assembly, as the case may be, for such action as may be deemed necessary by the Senate or Assembly.''

The section has no application here, as the charge there is not based upon a violation of the Penal Code, but to proceedings initiated under that section.

■ It is next contended that the questions were not material to the inquiry, and that the right of privacy of petitioners was violated. We believe it necessary to set forth in full one of the complaints.

''J. I. Harkins on oath complains and says:

That Boyd Coon First Count: committed misdemeanors as follows, to-wit: The said Boyd Coon on or about the 11th day of April, 1940, at the City of Stockton, County of San Joaquin, State of California, being then and there present as a witness before a committee of the House of the Legislature, did then and there wilfully and unlawfully refuse to answer a material and proper question, being a violation of Section 87 of the Penal Code of the State of California, and said question being as follows:

Question: Are you a member of the Communist Party?

Second Count: That said Boyd Coon on or about the 11th day of April, 1940, at the City of Stockton, County of San Joaquin, State of California, being then and there present as witness before a committee of a House of the Legislature, did then and there wilfully and unlawfully refuse to answer a material and proper question, being a violation of Section 87 of the Penal Code of the State of California, and said question being as follows:

Question: Isn't it a fact that you have been an active member of the Young Communist League?

Third Count: That said Boyd Coon, on or about the 11th day of April, 1940, at the City of Stockton, County of San Joaquin, State of California, being then and there present as a witness before a committee of a House of the Legislature, did then and there wilfully and unlawfully refuse to answer a material and proper question, being a violation of Section 87 of the Penal Code of the State of California, and said question being as follows:

Question: Isn't it true that you were a delegate to the Convention of the Young Communist League in New York City?

Fourth Count: That said Boyd Coon on or about the 11th day of April, 1940, at the City of Stockton, County of San

Joaquin, State of California, being then and there present as a witness before a committee of a House of the Legislature, did then and there wilfully and unlawfully refuse to answer a material and proper question, being a violation of Section 87 of the Penal Code of the State of California, and said question being as follows:

Question: Did you ever sell subscriptions for any other Communist Organizational paper?

Contrary to the form, force and effect of the statute in such cases made and provided, and against the peace and dignity of the People of the State of California.''

The complaints against the other defendants include other questions, but all have, in common, the question relating to membership in the Communist Party. As pointed out above, the resolution of the Assembly which created the Investigating Committee provided that: ''It shall have the power to investigate and report upon the extent to which the activities of groups and organizations, which include among their members persons who are either employees of the State Relief Administration, or who are receiving relief, affect the cost of the administration of unemployment relief, and to recommend such legislation in connection therewith as the committee may deem necessary or advisable.'' All defendants were employees of the State Relief Administration. The Communist Party certainly comes under the designation of a ''group'' or ''organization'', and consequently, the development of the fact whether or not such employees were connected with that group or organization was pertinent, material and proper. The cases cited by petitioners, and dealing with the right of privacy, did not involve the right of the State to conduct an inquiry among its *own employees* to determine their qualifications and fitness to continue in its service, and they have, no application here.

Petitioners rely upon *In re Battelle,* 207 Cal. 227 [277 Pac. 725, 65 A. L. R. 1497]. There, a committee was appointed by the legislature to investigate collusive bidding among manufacturers of cement. Upon the refusal of a witness to answer, he was cited for contempt by the *legislature,* and ordered into custody until such time as he might answer. The Supreme Court, upon *habeas corpus,* discharged the witness from custody upon the ground that the commitment did not recite the acts constituting the contempt. Here, it is

urged, the complaint should have recited the facts that the legislative committee was empowered to ask the questions which are made the basis of the complaint. The answer to that contention is that we are not dealing here with a contempt proceeding, but a violation of a section of the Penal Code. The same test should be applied here as obtains in the case of any complaint, indictment or information under the Penal Code. This test is found in section 1426 of said code, which is quoted above. This action is entirely independent and separate from the proceedings authorized by section 303 of the Political Code, referred to above.

Summing up the question last discussed, the Supreme Court of the United States, in a case very similar—*McGrain* v. *Daugherty* (273 U. S. 135 [47 Sup. Ct. 319, 71 L. Ed. 580–594, 595])—pointed out the presumptions in which a court will indulge in a case of this character. Daugherty was the brother of the Attorney-General of the United States. The United States Senate, by resolution, authorized a committee of its members to investigate the Department of Justice and its failure to prosecute certain individuals. A subpoena was issued by the committee for Daugherty and served upon him, but he failed to appear. He was found guilty of contempt, and ordered into custody. In holding that he was not entitled to his liberty under *habeas corpus,* the court said:

"The only legitimate object the Senate could have in ordering the investigation was to aid in its legislating; and we think the subject-matter was such that the presumption should be indulged that this was the real object. An express avowal of the object would have been better; but in view of the particular subject-matter was not indispensable. In the Chapman case, where the resolution contained no avowal, this court pointed out that it plainly related to a subject-matter of which the Senate had jurisdiction, and said: 'We cannot assume on this record that the action of the Senate was without a legitimate object;' and also that 'it was certainly not necessary that the resolutions should declare in advance what the Senate meditated doing when the investigation was concluded.' [*Re Chapman*] 166 U. S. [661] 669, 670 [17 Sup. Ct. 677, 41 L. Ed. 1154]. In *People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463, 52 Am. Rep. 49, 2 N. E. 615, where the court of appeals of New York sustained an investigation ordered by the House of Representatives of that State

where the resolution contained no avowal, but disclosed that it definitely related to the administration of a public office the duties of which were subject to legislative regulation, the court said (pp. 485, 487) : 'Where public institutions under the control of the State are ordered to be investigated it is generally with the view of some legislative action respecting them, and the same may be said in respect of public officers.' And again: '*We are bound to presume that the action of the legislative body was with a legitimate object if it is capable of being so construed, and we have no right to assume that the contrary was intended.*' " (Italics ours.)

One of the questions raised at the trial is strongly urged as coming within the due process rule. We refer to the act of the court in refusing to endorse a subpoena for witnesses residing outside the county, under the provisions of section 1330 of the Penal Code. Conceding that the court erred in said ruling, we are of the opinion that no prejudice resulted. The application of counsel for petitioners for the issuance of such subpoena shows that the six witnesses named therein were shorthand reporters. It appears that they took testimony produced before the committee in various portions of California. In the affidavit of said counsel he sets forth some fifteen matters to which said witnesses would testify. They are all predicated, as petitioners state, upon the fact "that the real and primary purpose of the committee and each of its members, was not to make an investigation with a view to determining what further legislation was necessary, and recommend the adoption thereof as provided in House Resolution No. 9 and No. 29, as amended, but on the contrary was one or more of the following:" Then follow the facts which they expect to prove by said witnesses. These facts are all of the same tenor and character. We quote several which are typical:

"A. To harass, interfere with, drive out of the State Relief Administration and destroy the State, County and Municipal Workers of America;

"B. To embarrass, harass, and destroy other CIO Unions, and, in particular, the American Newspaper Guild;

"C. To destroy Labor's Non-Partisan League of California;

"D. To destroy the Workers' Alliance of California;

"E. To attack, harass, hinder, defame and cause to lose their positions, various administrative officials of the State

Relief Administration, political leaders and others, including Alice Orans, Sam Houston Allen, Sam Ayeroff, Jules Kievitz, Allen Metcalfe, Don Healey, Willard Harper, Catherine Kilbourne, Patrick J. Gallagher, and Fred Lefever;''

We do not believe that such evidence would constitute a defense to the action, nor would it tend or assist toward that end. The purpose of the committee and its powers and legitimate objectives must be found in the legislative resolution to which we have alluded above, and such matters cannot be impeached by this proposed method. The evidence sought to be elicited from these witnesses was therefor immaterial to the issues, and had no bearing upon the guilt or innocence of petitioners. We conclude that, assuming the question could be raised in this proceeding, and that error was committed, no prejudice resulted from the ruling. We might add, however, that this court has held, in the matter of the application of Harley Noyes for a writ of *habeas corpus,* 39 Cal. App. 746 [179 Pac. 696], that ''The refusal to issue a subpoena for witnesses by a committing magistrate, or even the refusal to cause one to be issued for a like purpose by the superior court is not a ground for the release of a prisoner on *habeas corpus.* Discretion in that regard may be abused and error thereby committed, and thus a person examined or on trial on a criminal charge deprived of a lawful hearing or trial, but such abuse of discretion either by the magistrate or the superior court is mere error, which does not go to the question of jurisdiction to make the order of commitment or to impose judgment of sentence, and, therefore, is not reviewable in a proceeding under a jurisdictional writ. (*Matter of Jacobs,* 38 Cal. App. 474 (176 Pac. 689 [698].)''

In conclusion, we might add that we have examined the entire record and are satisfied that petitioners were justly and fairly tried and convicted. It is not only the right, but the duty of the state, particularly at this time, to ascertain if there are any in its employ who belong to any group or organization which advocates and practices its overthrow and destruction by subversive activities. ■ It is a matter of common knowledge that the Communist Party comes within that category. Self-preservation is said to be the first law of nature, but that maxim is even more applicable to the state, if its survival is to be ensured.

The writ is denied and the proceedings dismissed, and the petitioners are remanded to the custody of the sheriff.