[Civ. No. 3383. Third Appellate District.—March 26, 1928.]

F. S. MILES et al., Appellants, v. BERNARD ROSENTHAL et al., Respondents.

Arnold Praeger for Appellants.

Samuel A. Miller for Respondents.

HART, J.—This action was brought by the plaintiffs against the defendants for damages for an alleged libelous writing published by the latter concerning the former and involving an attack upon their character and reputation as real estate brokers.

The questions of fact were tried by a jury, who found for the defendants. The appeal is from the judgment and from a purported order denying plaintiffs a new trial.

The defendants first protest that the record does not show that a motion for a new trial was presented to and determined by the court below, hence "there is no appeal here from an order denying a new trial." As to this, all that the record itself discloses is that the defendants gave notice of intention to move for a new trial, and a notice that, on the eleventh day of December, 1924, they "will move the court" to vacate and set aside the verdict of the jury and the judgment thereon entered. There is, however, nothing in the record to show that a motion for a new trial was ever presented to the trial court, or that said court ever passed upon or decided or made an order denying such a motion. In their opening brief counsel for plaintiffs assert that "in due time a motion for a new trial was made on the grounds set forth in the motion of intention, and within the time allowed by law said motion was heard by the court and denied," and that no denial of said statement is made by counsel for the defendants in their brief. The record itself should, of course, show that the motion was duly presented to and passed upon and decided by the court. We may, upon the consideration that counsel for defendants did not deny in his brief that a motion for a new trial was presented to and denied by the court, assume that, in point of fact, such motion was made and denied, and that the record may be treated as so disclosing. ■ There is, however, no appeal authorized from an order denying a motion for a new trial, and the appeal from such order here will, therefore, have to be dismissed (Code Civ. Proc., sec. 963). The points growing out of the grounds upon which a motion for a new trial may be made, where such motion is made and denied, may be reviewed upon the appeal from the judgment. (Code Civ. Proc., sec. 956; *Wiley B. Allen Co.* v. *Wood,* 32 Cal. App. 76, 79 [162 Pac. 121].)

It is further preliminarily objected by the defendants that the question of the sufficiency of the evidence cannot here be reviewed for the asserted reason that plaintiffs have not specified in the bill of exceptions ''the particulars in which such evidence is alleged to be insufficient.'' The ''specifications of error'' set forth in the bill of exceptions, with the exception of one, are addressed entirely to an alleged error in the ruling of the court excluding certain evidence offered by the plaintiff and alleged errors in embracing within its charge to the jury certain instructions proposed by the defendants and excluding therefrom certain instructions proposed by plaintiffs. The specification involving the exception referred to is to the effect that ''the verdict is unsupported by the evidence to prove the truth of the charge,'' referring to the alleged misconduct with which the defendants charged the plaintiffs and upon which this action is based. The specification is certainly awkwardly expressed, but we shall assume that it is sufficient to justify a review of the testimony to determine whether it is sufficient to support the verdict, the purpose of the specification undoubtedly being to raise that question. ██ Besides, the trial judge has certified that the bill of exceptions contains ''a full, true and correct statement of all of the evidence admitted at the trial of the above-entitled action, and the papers used on the motion for a new trial,'' and as the evidence is not voluminous, we will treat the specification sufficient in all respects to justify an examination of the evidence with the view of determining whether the decision below is bottomed by sufficient evidentiary support.

The record discloses that both the plaintiffs and the defendants were, prior to and at the time of the commencement of this action, duly licensed real estate brokers, in the city of Los Angeles, and, as the entitlement of the complaint declares, each was organized for that purpose as a copartnership. It appears that, prior to and at the time of the institution of this action, there existed and was maintained, in the city of Los Angeles, as its principal place of business, a corporation, duly organized and existing under and by virtue of the laws of the state of California, under the name of the ''Los Angeles Realty Board, Incorporated,'' and that the plaintiffs and the defendants were members thereof. The object of said realty board and the purpose for which

it was formed are as set forth in article II of its constitution and by-laws, as follows:

"To secure for its members the benefit of united effort and concentrated power, to the end that the evils and annoyances connected with the transaction of business in real estate and real estate brokerage, shall be abated; to promote good-fellowship and fair-dealing in such business; to protect its members and the public in general from irresponsible, unprincipled and dishonest dealers in real estate; to promote the enactment of legislation for the protection of property rights and the dealings pertaining thereto; and to do all else in the power of the association and its members, which may tend to the upbuilding, and stability and the dignity of the business of dealing in real estate. This corporation is not organized for pecuniary profit."

Article IV of the by-laws provides that complaints against members of the board shall be in writing "upon the regular form provided by the Board," and delivered to the secretary thereof. Said article further provides that when a member is "complained against," he shall immediately be furnished with a copy thereof, and within ten days therefrom shall, in writing, answer the charge set forth therein. It is also provided that no member shall be dismissed from membership of said board without "first having the opportunity of appearing before the Arbitration Committee or the Board of Governors and being heard in self-defense." Article IV proceeds:

"All complaints and defenses thereto shall be immediately submitted to the Arbitration Committee—such Committee will promptly analyze each complaint, have power to subpoena principals and witnesses and their findings shall be final, subject only to review by the Board of Governors. Should either party to a complaint be dissatisfied with the findings of the Arbitration Committee such aggrieved party may upon payment of a fee of $25.00 have his case reviewed by the Board of Governors in regular or special session.

"Findings of the Arbitration Committee shall be promptly reported to the Board of Governors, in writing, and shall set forth clearly and concisely 'he allegation—the defense—and the finding of the Committee."

It appears that on the thirty-first day of December, 1923, the defendants instituted an action in the superior court in

and for the county of Los Angeles against the plaintiffs to recover the sum of $5,000, which, it was alleged in the complaint in said action, was obtained by the plaintiffs in a real estate transaction to which the former and the latter were parties under circumstances which it was charged in the complaint in that action involved fraudulent conduct upon the part of the plaintiffs. Certain of the allegations of the complaint filed in said action by the defendants here (as plaintiffs therein) against the plaintiffs here (as defendants therein), involve the alleged libelous statements of and concerning the plaintiffs herein of which they here complain. The complaint in said action is too lengthy in its statement of the case to justify reproducing herein, only in substance, the allegations thereof which are important in their relation to the case at bar. It will suffice, for the purposes of the decision here, to explain generally and briefly such allegations. It is therein alleged that the plaintiffs and one J. M. Hardman, on the eleventh day of October, 1923, entered into an exclusive option agreement with one Curry, by the terms of which Miles & Fitzhenry (plaintiffs here) and said Hardman were to have and receive an option from said Curry for the sale of a certain lease for the price of $95,000 net to the said Curry; that said agreement expressly provided that Miles & Fitzhenry and Hardman were to receive no commission on the sale of said lease. The terms and conditions of the payments on the purchase price of said lease were prescribed by said option agreement, and the option was to expire on October 22, 1923, but before said date the time for the expiration of said agreement was, on the same terms and conditions, extended to and including November 6, 1923. Between the date of the execution of said agreement and the sixth day of November, 1923, said Hardman proposed to Bernard Rosenthal, a member of the defendant copartnership herein, that his firm purchase an interest in said option agreement, and after negotiations between Hardman and the defendants here regarding the proposition so made by Hardman, said defendants, on the thirty-first day of October, 1923, entered into an agreement with the plaintiffs whereby the former agreed to and finally did purchase the interest of plaintiffs here in said exclusive option agreement for the sum of $4,000, which sum the defendants here then paid to plaintiffs here. The Rosenthals

thereupon became the owner of the half interest of Miles & Fitzhenry in said agreement, Hardman being the owner of the other half interest. On October 31, 1923—the day on which the defendants here purchased and paid for the half interest of the plaintiffs here in said option and about six hours subsequently to such purchase and payment—the plaintiffs and said Hardman approached said Curry and stated to the latter that it was impossible for them to sell said lease for the sum of $95,000 net to him (Curry) and at the same time said to the latter that they (said plaintiffs and Hardman) had a purchaser who would purchase said lease for $95,000, "and (quoting from the complaint in said action) that they would proceed to sell the lease to said prospective purchaser if the said W. E. Curry would agree to pay to them the sum of $5,000.00 as a commission for services rendered in the sale of said lease; that in truth and in fact the said lease had already been sold to the plaintiffs herein at least five or six hours prior to the making by these defendants of said representations to the said W. E. Curry, and that the said plaintiffs herein assumed and agreed to perform all the terms and conditions of said option agreement of October 11th, 1923, and that as a result of the agreement to assume and carry out the terms and conditions of said option agreement of October 11th, 1923, and further by reason of their having paid to the defendants, Miles & Fitzhenry, the sum of Four Thousand ($4,000.00) Dollars the plaintiffs became entitled both as agents and as purchasers of said option agreement to any and all sums of money to be paid to the defendants herein by reason of said transaction. Upon information and belief plaintiff alleges that for the further purpose of misleading the plaintiffs herein and said W. E. Curry, the defendants, Miles & Fitzhenry, had it appear that the defendant, Edward J. Peil, had rendered services in effecting the sale of said lease and therefore authorized the payment by said W. E. Curry to said Edward J. Peil of said sum of Five Thousand ($5,000.00) Dollars as commission; that, however, said Edward J. Peil, has rendered no services in connection with this transaction. That upon information and belief the plaintiffs further allege that the defendant, Edward J. Peil, is now and was at all times herein mentioned employed in the office of the defendant, Miles & Fitzhenry as their agent.

That prior to the filing of this cause of action, and to-wit: on or about the 21st day of December, 1923, the plaintiffs purchased of and from the defendant, James M. Hardman, his interest in and to said option agreement of October 11th, 1923, and extensions to November 6th and of October 31st, 1923, and is now the owner and holder of said option agreement and is entitled to all benefits and proceeds thereof. That the plaintiffs herein have paid into escrow the sums of money set out in the option agreement of October 11th, 1923, and the extension thereof dated October 31st, 1923, and have carried out all the terms and conditions on their part to be performed.''

The complaint in the present case alleges, among other things:

''That on or about the 4th day of January, 1924, the defendants herein, wilfully, intentionally and maliciously wrote, and published a certain letter concerning the plaintiffs herein, which said letter is in words and figures as follows, to-wit:

'' 'January 4th, 1924.

'' 'Los Angeles Realty Board,

'' 'City.

'' 'Gentlemen:

'' 'Complaint against Miles & Fitzhenry.

'' 'Misrepresentation and subterfuge in the sale and transfer in a certain leasehold located on Cahuenga Avenue between Hollywood and Sunset Boulevard.

'' 'Endeavor to collect from both sides without the knowledge of both.

'' ' (See attached legal instrument.)

'' 'ROSENTHAL REALTY CO.

'' 'By BERNARD ROSENTHAL.'

''That said letter was delivered to the said Los Angeles Realty Board and was read by divers persons.

''That by the publication of said words and language as aforesaid, the defendants intended to and did charge and assert and to be understood as charging and asserting, and by the readers of said letter in fact was understood as charging and asserting that the plaintiffs had been dishonest and corrupt in their dealings and had been guilty of a breach of the Real Estate Brokers Act of the State of Cali-

fornia, Chapter 51 of the Laws of 1923, approved April 27, 1923. [Stats. 1923, p. 93.]

"That said charge as made and published by the defendants and as understood by the persons reading said letter and by the defendants intended to be so understood, was and is false, malicious and unprivileged and did and does expose the plaintiffs to hatred, contempt and obloquy by imputing to them a dishonest and disreputable course of conduct in their said business. That said charge published by defendants as aforesaid was maliciously made and was intended to defame said firm and injure it in its business and reputation.

"That by reason of the publication aforesaid, the business of the plaintiffs was injured and the reputation of said business defamed and damaged in the sum of fifty thousand dollars ($50,000.00)."

The answer of the defendants to the said complaint admits that on the date stated in paragraph 3 of the last mentioned pleading, defendants wrote the letter, in said paragraph referred to, "addressed to the Los Angeles Realty Board, a copy of which is set out in the complaint, but deny that they wrote and (or) published the same wilfully and (or) maliciously"; admits that said letter was delivered to said Los Angeles Realty Board, and avers that it was written and delivered to said board in the discharge of the duty of defendants "to the general public and other persons engaged in the business of buying and selling real property in the city of Los Angeles and throughout the state of California, and as a privileged communication." The answer (paragraph 4) specifically sets up the defense that the letter as set out in paragraph 3 of the complaint was written and delivered by the defendants to said realty board "as a privileged communication."

As a separate and special defense, the defendants allege that both they and the plaintiffs are members of the realty board above mentioned, set forth certain provisions of the constitution and by-laws thereof, which provisions are hereinabove, in substance, presented, and proceed further to allege that it was in pursuance of their duty as members of said board, as prescribed by said constitution and by-laws, "and for no other reason," that they (defendants) delivered to the secretary of said board the letter hereinabove set

forth. It is in said answer further alleged that said letter and the complaint contained therein against the plaintiffs were so filed and delivered without malice, and that "the same was and is a privileged communication." As "a further and separate defense," the answer alleges:

"That the charge against the said plaintiffs contained in the said letter of January 4th, 1924, written by these defendants, and delivered to the said Los Angeles Realty Board, was and is true, and said letter was written and delivered without malice, and as a privileged communication."

The plaintiffs' action is, of course, founded on section 45 of the Civil Code, which provides: "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

The defendants, as has been shown, plead that the letter filed with the realty board was and is a privileged communication, and that the same was made in the manner indicated without malice. (Civ. Code, sec. 47, subd. 3.) So much of said section as directly concerns the present consideration defines, in part, a privileged publication to be one made "in a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information."

We have reproduced hereinabove copious quotations from the complaint, a copy of which, as seen, was attached to the written charge of misconduct filed before the realty board by the defendants against the plaintiffs. That pleading, or a copy thereof, was undoubtedly so filed for the purpose of amplifying or explaining the charge made against the plaintiffs. The allegations of said complaint are also important in their bearing upon the ruling of the trial court in excluding certain evidence offered by the plaintiffs and to which ruling attention at the appropriate place herein will be given.

The evidence, both oral and documentary, conclusively supports the verdict. The fact that the plaintiffs held an option on the Curry lease and the fact they sold said option to the defendants for the consideration of $4,000 are not denied. There is ample proof from which the jury, believing such proof as presumptively they did, were justified in finding, as impliedly they did so find, that the plaintiffs, within a brief time after selling to defendants their right of option to purchase said lease, procured from Curry an agreement to the effect that they could and would sell the lease to a prospective buyer, for the sum of $95,000, provided he would pay them (plaintiffs) the sum of $5,000 for consummating such sale. As to this agreement, it should be stated that it was in writing and ostensibly was made with one Edward J. Peil, who, however, the evidence without conflict shows, was an employee of the plaintiffs at the time of its execution. The agreement was signed by Curry, and beneath his signature were these indorsements and in the order here given:

"Witness:
"EDWARD J. PEIL.
"Accepted:
"C. ALBERT FITZHENRY."

At the time of the execution of the above agreement, Fitzhenry, Miles, Peil, and Hardman were present and witnessed and took part in the transaction. Curry, testifying as a witness for the defendants, declared that he was not on that, or any other occasion, told either by Fitzhenry, Miles, Hardman, or Peil that the plaintiffs had sold their option to purchase the lease to the defendants. And, notwithstanding that both Fitzhenry and Hardman, the latter (so the evidence shows) operating conjointly with the plaintiffs in the several transactions, were called to the witness-stand by the plaintiffs and questioned concerning certain phases of the transaction, were not asked a single question by their attorney relative to this latter transaction with Curry. Indeed, counsel for plaintiffs so restricted the examination in chief of those witnesses that counsel for defendants, as the trial court properly held, could not competently inquire into the facts of said transaction on cross-examination. Nor was there offered by the plaintiffs any

testimony regarding said transaction or any attempt made by them to make the transaction accord or appear to accord with the proper conception of fair dealing on the part of the plaintiffs in the transaction. From these circumstances and those characterizing the transaction itself, the jury were warranted in concluding, as their verdict implies that they did conclude, that the said transaction could not be explained by the plaintiffs consistently with those ethical considerations which should be the ruling force behind all business transactions between man and man, and which, as the evidence shows, it is the cardinal purpose of the realty board of the city of Los Angeles, to which both parties to this action belong, to inculcate in and require of its members that they, as real estate brokers, carry into all their transactions with any of the public with whom thus they have dealings.

That there is testimony from which the jury were legally authorized to infer and definitely conclude that the publication of the communication in the manner indicated was without malice on the part of the defendants, but that it was made in good faith and under an honest belief that the charge against the plaintiffs therein contained was true, an impartial reading of the record evidence will leave no room for doubt. The plaintiffs, upon applying for membership in the realty board, referred said board to the defendants as vouchers of the fitness of the plaintiffs for membership of the organization, and were, by the defendants, strongly recommended to that organization as in all respects eligible to be received as such members. This circumstance is important in that it constitutes conclusive proof of the fact that, prior to the happening of the transactions involved herein, the personal relations between the plaintiffs and the defendants were of an amicable character; that, in other words, prior to the time mentioned, there did not exist between them that feeling of personal hostility which often arises between individuals that are rivals in the prosecution of the same kind of business enterprises. Again, the fact that the defendants instituted an action against the plaintiffs to recover the $5,000 which Curry agreed to pay them as a commission for selling the lease, is itself a circumstance tending strongly to show that, rather than being actuated by malice in complaining of the plaintiffs to the realty

board, the defendants honestly believed that the plaintiffs had in the transaction committed a wrong and thus had violated the very first of the objects to promote and maintain which the realty board had been organized and was being maintained. So believing, and having reasonable grounds for such belief, it was the duty of the defendants, as members of the realty board, to complain to said board of the conduct of the plaintiffs in the transaction and to file with the board a complaint in writing setting forth the nature of the charge. In this connection, it should be stated that Bernard Rosenthal, a member of the copartnership defendant, testified that he first went to the secretary of the realty board and verbally complained of the conduct of plaintiffs in the transactions, but was told by said secretary to put his charge in writing, as the by-laws of the organization required, and that thereupon he filed with the board a copy of the complaint in the action of defendants against the plaintiffs to recover the $5,000 referred to, charging against the latter the alleged misconduct in the transactions involved herein. Moreover, Bernard and Joseph Rosenthal each testified that, at the time of filing the charge against plaintiffs with said board, he bore no malice against the plaintiffs or any of them, and that he "bore none now."

The plaintiffs introduced testimony to the effect that, in a conversation over the telephone with Hardman, after the discovery by the defendants of the $5,000 transaction between Curry and (ostensibly) Peil, Bernard Rosenthal referred to the defendants as "crooks" and threatened that he "would get them." It was further shown that one of the Rosenthals made complaint of the transaction to certain members of the Masonic Lodge in which Miles, of the plaintiff copartnership, was then progressing through the degrees, with the purpose, obviously, of preventing Miles from proceeding further in the matriculation of his membership of that body. Miles himself was present when the charge was made to the Masonic members. These circumstances were offered, of course, upon the assumption that they tended to show that the defendants nourished a malicious feeling toward the plaintiffs, growing out of the transactions involved herein. These circumstances are not necessarily inconsistent with the defense interposed by the defendants that the charge filed with the realty board was true, or with

the further defense that the communication was privileged and published without malice. With regard to the part Peil took in the $5,000 transaction with Curry, it is well to note that the plaintiffs did not deny or attempt to contradict the testimony that he (Peil) was in their employ at the time that transaction occurred, and that it was carried on and completed in the presence of Fitzhenry, Miles, and Hardman. Peil himself was not called as a witness, and no explanation essayed of why he was not. The jury could well have concluded from the circumstances attending that transaction, which took place shortly after the plaintiffs had sold their interest in the option to defendants, that Peil, in said transaction, was not acting for himself but for the plaintiffs, and that they used him therein as a mere makeshift to conceal, if thus it could be done, any malversation on their part in the deal.

Further consideration herein of the evidence is not required. It is enough to say that the evidence upon all the essential issues submitted by the pleadings, as well as those worked in by the proofs, is such as to absolutely forbid interference by a court of review with the result arrived at below, in so far as are concerned the evidentiary considerations of the record. We are well justified by the record in saying that, in the facts, this case, in so far as the transactions giving rise to it are concerned, finds a striking counterpart in the case of *Tate* v. *Aitken*, 5 Cal. App. 505, 512 [90 Pac. 836], as will be perceived on reading the opinion therein.

The defendants introduced in evidence, under the sanction of the trial court, the complaint in their action against the plaintiffs for judgment for the $5,000 which Curry agreed to pay to them or (ostensibly) to Peil. It was, it will be kept in mind, a copy of said complaint which was attached to the complaint filed by defendants with the realty board against the plaintiffs. The latter thereafter offered in evidence the answer to said complaint, and the court sustained an objection by the defendants to the admission thereof, on the ground that the answer did not constitute competent evidence, in that it was self-serving. Said answer is not in the transcript here, but it may be presumed that it properly denied the material averments of the complaint, or tendered an issue upon the material

facts. In any event, however, we agree with the trial court that said answer would be and was, as to the instant case, hearsay and self-serving. But the complaint, being a part of the written charge filed against the plaintiffs before the realty board, and, as above stated, explanatory, in a more amplified form, of the charge than was the brief written charge itself, was admissible under section 1854 of the Code of Civil Procedure. In that view, the answer to said complaint would not be admissible, since it in no way or sense bore any connection, certainly no direct connection, with the act of the defendants in preferring the charge against the plaintiffs before the realty board, and, therefore, it would not be admissible under the terms of the section of the code just mentioned. The complaint in said action, being admissible and admitted under said section, became subject to consideration by the jury for any competent purpose which it might subserve in the determination of the issue which they were required to decide. It undoubtedly tends to show (and the jury had the legal right to consider that pleading on that question) that the filing of the charge against the plaintiffs with the realty board was inspired, not by malice, but by a conviction of duty they owed to said board, as members thereof, arising out of an honest belief that the plaintiffs, also members of said organization, had committed an act in a real estate transaction which was characterized by a degree of turpitude sufficient to justify either their expulsion or suspension as members of the board. In other words, the complaint in said action, being founded on precisely the same transaction and exactly the same facts as those constituting the basis of the charge filed with the realty board, became, upon its introduction into the record, competent evidence of no little potency in probative force that the defendants were not actuated by malice in making the complaint against the plaintiffs to the realty board. The effect of the answer to said complaint, presuming, as we may, that it denied each and every material averment of said complaint, would only be to tender in *that action* an issue upon the question whether the charge was true or false, and, obviously, all that said answer could accomplish here, if admitted in evidence in this case, would be to show that in the other action the plaintiffs here, as defendants there, had by answer tendered such issue, which would prove noth-

ing material to the issues in this case or tend to do so. It certainly would not tend to prove in the present action that the defendants, in preferring the charge against the plaintiffs before the realty board, were prompted by malice. Said answer was not competent evidence for any purpose or for any reason in the case at bar.

The instruction first complained of contained the definition of libel in the precise language of section 45 of the Civil Code. Immediately following that definition as so given, and in the same paragraph, the court added: "This action is brought under the last clause of that, the claim being that the alleged libel has a tendency to injure the plaintiffs in their occupation." It is this particular part of the instruction to which the plaintiffs object, the argument being that the court thereby limited the jury to the consideration of the injury, if any, sustained to the business of the plaintiffs by the publication, whereas, so it is contended, the plaintiffs were entitled to have considered by the jury any damage which might have resulted to them individually or in their personal capacity. While the complaint, as will be observed (par. 5), alleges that the charge filed with the realty board "did and does expose the plaintiffs to hatred, contempt and obloquy by imputing to them a dishonest and disreputable course of conduct *in their said business*," still it is clear that, when that language of the complaint is read and considered in connection with other allegations of that pleading, the real essence or gravamen of their objection to the charge is that the effect of its publication was to injure and degrade the good name and reputation of the copartnership as a business concern. In confirmation of this conclusion, we need only to refer to the last sentence in paragraph 5 and also to the language of paragraph 6 of the complaint. The language of paragraph 5 particularly here referred to is hereinabove presented, as is also paragraph 6 of said pleading, which expressly alleges that the damage done by reason of said publication was to the business of the plaintiff corporation. But the instruction in effect necessarily embraces the proposition that it would be the duty of the jury to consider the damage, if any, done to the personal character and reputation of the members of the copartnership, for, obviously, only because of the damage or injury to the personal character and reputation

of the members as real estate brokers could there be damage or injury done to the copartnership as an artificial entity, and an intelligent jury could not otherwise understand the instruction. What undoubtedly was meant to be stated in the instruction, and what the instruction rationally construed does say, was that the plaintiffs relied in this action upon the damage, if any, which resulted to the copartnership as a business concern, through any damage which had been done to the personal character and reputation of the individuals constituting the copartnership.

 It is next claimed that the court misdirected the jury in instructing them that, if they found that the communication in question was privileged within the meaning of subdivision 3 of section 47 of the Civil Code, the fact that such communication contained a false charge against the plaintiffs is immaterial, "provided you find that said charge was made by the defendants without malice, in good faith in their belief of its truth, and upon reasonable grounds for their belief, your verdict would be for the defendant." This instruction is not an erroneous statement of the law applicable to cases where the publication complained of comes within the rule, as does the case here, of qualified privilege. (*Snively* v. *Record Publishing Co.*, 185 Cal. 565 [198 Pac. 1].) The same is to be said of another given instruction, of which complaint is made, to the effect that, even if the jury found that the charge was not true, the verdict should be for the defendants if they found that the latter "honestly believed it to be true."

The court instructed the jury that "the burden of proof is on the plaintiffs in this case to show that the communication by the defendants to the realty board complained of was not a privileged communication, and that the charges made therein against the plaintiffs were false and were made with malice." This instruction, say plaintiffs, involves a misstatement of the rule applicable in cases of the character of the one before us.

As seen, the answer herein alleges that the communication is privileged, that the charge therein made is true and that it was published without malice. In *Snively* v. *Record Pub. Co., supra,* it is said that, even where the complaint does not allege that the charge against the plaintiffs was made

and published with malice, if the defendants allege in their answer that "the publication was on a privileged occasion and was made without malice," they thus directly put in issue the question of actual malice; that in such case, "as actual malice was an essential part of that defense, it was necessary for the defendants to prove such absence in order to sustain this defense." In the instant case, as we have seen, the plaintiffs expressly charged that the communication was filed with the board for the purpose of maliciously injuring the plaintiffs. If the defendants had merely denied that the publication was made with malice, we would be inclined to the conclusion that the burden would be upon the plaintiffs to prove the existence or presence of malice in the publication; but, however that may be, the defendants went further than that—indeed, further than the law required them to go—for, as is lucidly pointed out by Mr. Justice Curtis, in the very recent case of *Maher* v. *Devlin,* 203 Cal. 270 [263 Pac. 812, 819], all that is necessary in such a case as the present is to plead that the publication or communication was made without malice; whereas, the defendants here allege that the publication was privileged, that it was true and made without malice. We are of the opinion that thus they assumed the burden of proving that the communication was made without malice, but that, notwithstanding that they pleaded in justification that the charge was true, all that they were required to prove in that particular was that they honestly and in good faith believed it to be true. Obviously, the allegation of the answer that the charge was true, necessarily carried the statement that the defendants honestly believed it to be true. However, the instructions now being considered involved, under the circumstances of this case, an erroneous statement of the law; but the error so committed is not such as to require a reversal, for the reason that we are clearly justified in the conclusion at which we have arrived on a painstaking consideration of the record that it must be held, as a matter of law, that the evidence shows that the charge contained in the communication is true and that it was made by the defendants without malice. We have hereinabove reviewed the evidence and it speaks for itself on this proposition in no uncertain terms. It is not necessary here to recapitulate

the evidence or the analysis thereof, which has already been given. We may, though, with no impropriety emphasize the proposition that, in filing the charge against the plaintiffs with the realty board, the defendants, honestly believing the same to be true, did only what it was their bounden duty to do as members of that organization. If they had failed or omitted to pursue that course they would have been guilty of a flagrant violation of the obligations to which they subscribed when they were initiated into membership of said board and for which they would have been subjected at the least to censure at the hands of that organization, and possibly to expulsion from further affiliation therewith. The performance of a lawful act in a proper way in pursuance of a duty inexorably required can afford no inference of malice in the performance of such act. To the contrary, the irresistible inference in such case is that such act was done or performed not only without malice, but in response to an imperative or binding duty or obligation. It may be added that, in cases of qualified privilege, to which class of cases the one at bar belongs, the rule is that malice is not inferred from the communication or publication. (Civ. Code, sec. 48.)

■ It is claimed that it was error for the court to disallow a proposed instruction to the effect that the plea of justification by the defendants is not sustained "unless in your judgment the evidence tends to prove every element essential to the truth of the charge implied to the plaintiffs. . . . And if the evidence offered by defendants in support of their defense that the alleged defamatory matter is true falls short of convincing you that such charge is true, you cannot consider such evidence as tending to mitigate the plaintiffs' damage." From what has been said above, the foregoing instruction does not embrace a statement of the true rule.

Plaintiffs' instruction No. 8 is not pertinent to the evidence in this case. We need not further consider it. ■ The court's instruction on the subject of the presumption of malice following from the proof of the publication of false and unprivileged matter contains a correct statement of the rule in unprivileged cases, but was not pertinent to the issues herein. It was harmless in its effect upon the

rights of the plaintiffs. Indeed, if anything, it was favorable rather than unfavorable to the plaintiffs.

The judgment is affirmed.

Plummer, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 24, 1928.

All the Justices concurred.