[L. A. No. 414.   Department One.—September 2, 1898.]

GERARD GRAND, Respondent, v. LOUIS G. DREYFUS, Appellant.

SLANDER—PLEADING—INNUENDO—INDUCEMENT.—In an action for slander, when the words spoken are not actionable *per se*, the *innuendo* in the pleading can only be employed to interpret the meaning of the words used; and if the natural import of the language is not actionable, the *innuendo* cannot serve to introduce a broader meaning to make it so, unless connected with proper introductory averments of matter of inducement, or colloquium, setting forth extrinsic circumstances, which, coupled with the language uttered, affects its construction, and makes it actionable. The *innuendo* cannot supply the place of the colloquium, or inducement.

ID.—MEANING ATTRIBUTED BY BYSTANDERS.—A defendant cannot be required to answer to a charge of slander merely because bystanders attributed to his language an actionable meaning. different from the natural import of the terms used, if the complaint does not disclose facts from which the court can see that the hearers had a right to put such construction on the language used, or that, as matter of law, it had such meaning.

ID.—CHARGE OF SELLING HOGS—INSUFFICIENT COMPLAINT.—A complaint, alleging that the defendant spoke of plaintiff the words: "If he [meaning the plaintiff] continues to sell [meaning steal] my hogs, I will send him [meaning plaintiff] where he was another time [meaning the state's prison of the state of California]," and alleging that the words were so understood by the persons spoken to, but not alleging facts from which the court can see that the words used were susceptible of the meaning alleged, does not state a cause of action.

APPEAL from a judgment of the Superior Court of the County of Santa Barbara.   W. B. Cope, Judge.

The facts are stated in the opinion.

Richards & Carrier, for Appellant.

The innuendo cannot enlarge or extend the natural import of the words used. (*Pollard v. Lyon*, 91 U. S. 225, and cases cited; 13 Am. & Eng. Ency. of Law, 465, 466, tit. "Innuendo"; *Coburn v. Harwood*, 12 Am. Dec. 37; Anderson's Law Dictionary, tit. "Innuendo," and cases cited.)   It cannot supply the place of the colloquium.   (*Clarke v. Fitch*, 41 Cal. 472; *Nidever v. Hall*, 67 Cal. 82; 13 Am. & Eng. Ency. of Law, 460, 463.) The code (Code Civ. Proc., sec. 460) dispenses with the colloquium and innuendo only so far as they show that the defamatory words applied to the plaintiff, and goes no further.   The averments necessary in common law pleading to show the meaning of the words must still be made. (*Harris v. Zanone*, 93 Cal. 59, at page 65, and authorities cited.)   The words used are not actionable, and the complaint does not show that they are such.   (1 Am. Lead. Cases, Hare & Wallace's notes (to *Brooker v. Coffin* and *Burtch v. Nickerson*) 5th ed., 107, star p. 93; *Rea v. Wood*, 105 Cal. 314; *Ogden v. Riley*, 25 Am. Dec. 513; Civ. Code, sec. 1721; *People v. Devine*, 95 Cal. 227; 2 Bishop's Criminal Law, secs. 794-853.)

B. F. Thomas, for Respondent.

The common-law rules as to pleading an action of slander are dispensed with in this state. (Code Civ. Proc., sec. 460; *Harris v. Zanone*, 93 Cal. 59.)   The complaint sufficiently shows the intent to charge plaintiff with the crime of larceny. (*Brooks v. Harrison*, 91 N. Y. 83; Townshend on Slander and Libel, 164.)

CHIPMAN, C.—Action for slander.   Plaintiff had the verdict of a jury, with damages assessed at three hundred dollars. Defendant appeals from the judgment on bill of exceptions. The pleadings are verified.   A general demurrer to the complaint was overruled.

The alleged slanderous words were spoken in the French language to Frenchmen and are set forth in French with their

meaning in English, to wit: "If he [meaning the plaintiff] continues to sell [meaning steal] my hogs, I will send him [meaning plaintiff] where he was another time [meaning the state's prison of the state of California]. I have had many other occasions to have had him arrested"; and it is alleged that the words so spoken in the French language were understood by the persons to whom spoken as above translated and explained in English. The answer does not specifically deny using the language concerning the selling of the hogs, nor that the language was intended to convey the meaning as alleged, nor that the words were understood as translated; but it is denied that any of the words were falsely or maliciously spoken or were understood to mean "that defendant had had many occasions to have had plaintiff arrested." Defendant also set forth that he held a chattel mortgage on the hogs executed by plaintiff, and that while it was in force plaintiff sold certain of the hogs so mortgaged, without obtaining the consent of defendant and without notifying him of such sale, and without his knowledge, and without notifying the vendee that the hogs were mortgaged to defendant, and defendant claims that he had reference to these facts when speaking the words stated in the complaint. Defendant also alleges that plaintiff had been guilty of the charge alleged in the complaint to have been made against him by defendant of unlawfully selling hogs in which he, defendant, had an interest as mortgagee, and that whatever defendant said of and concerning plaintiff was said in the belief of its truth and verity, and as a warning to others, and not from any motives of malice toward plaintiff.

Defendant moved for a nonsuit at the close of plaintiff's evidence, and he now urges error in overruling this motion. The points presented are: 1. That the complaint does not state sufficient facts because there is no statement in the nature of a colloquium of the extrinsic facts showing the words charged to have been uttered or used in an offensive sense, different from their ordinary meaning and import; and 2. The language does not state a slander *per se* and there are no allegations as to the tendency of the language to directly injure plaintiff in his trade or business, and there are no allegations as to what constitutes his trade or business, and there is no allegation of actual damage

caused by the natural consequence of the slander.   The alleged defamatory matter here charged falls under subdivision 1, section 46 of the Civil Code, reading: "Slander is a false and unprivileged publication other than libel, which: 1. Charges any person with crime, or with having been indicted, convicted or punished for crime."

Section 460 of the Code of Civil Procedure provides that: "In an action for libel or slander it is not necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose; but it sufficient to state, generally, that the same was published or spoken concerning the plaintiff."

It is beyond dispute that the word "sell," regarded in its ordinary meaning, does not carry with it the impression conveyed by the word "steal."   It was held in *Harris v. Zanone,* 93 Cal. 59, that "the statute dispenses with the colloquium and innuendo only so far as they show that the defamatory words applied to the plaintiff, and goes no further.   The averments necessary in common-law pleading to show the meaning of the words must still be made."   It was also there held that where the words spoken are libelous in themselves, and were uttered in the vernacular of those to whom they were addressed, it is not necessary to make any averment other than that they were spoken of and concerning the plaintiff, nor to allege that they were understood by the hearers to apply to the plaintiff.   Where the words are not libelous in themselves the rule is different.   (Townshend on Slander and Libel, secs. 308, 310.)   The office of the innuendo is merely to interpret the meaning of the language used; indeed, the word "meaning" is the synonym of the word "innuendo"; and so is the phrase "that is to say"; and hence it is held that, where the words spoken are actionable, an innuendo undertaking to state the same in other words is superfluous; if not actionable or libelous *per se* the innuendo cannot introduce a meaning broader than the words naturally bear, unless connected with proper introductory averments.   (*Van Vechten v. Hopkins,* 5 Johns. 220; 4 Am. Dec. 339; *Pollard v. Lyon,* 91 U. S. 225; *Young v. Cook,* 124 Mass. 41; Townshend on Slander and Libel, secs. 308, 335.)   Mr. Townshend says: "It [the in-

nuendo] may serve for an explanation, to point a meaning where there is precedent matter, expressed or necessarily understood or known, but never to establish a new charge. It may apply what is already expressed, but cannot add to nor enlarge nor change the sense of the previous words. If the words before the innuendo do not sound in slander, no meaning produced by the innuendo will make the action maintainable, for it is not the nature of an innuendo to beget an action." (Townshend on Slander and Libel, sec. 335.)

It has been held that words like these "you swore false," "you took a false oath," "he swore false before Esquire Andrews," "he swore to a lie," will not sustain an action unless the declaration contains a colloquium showing that the words referred to a trial or other legal proceeding. (Cases cited in *Pike v. Van Wormer*, 5 How. Pr. 171.) It was stated in this case that "the reason is that the words standing alone do not, as matter of law, impute a crime punishable in a temporal court. A man may swear false without having taken an oath in any court; and he may swear false in a court of record, in a point not material, without incurring the penalty of perjury." There is no hardship in requiring the plaintiff to state in his complaint those circumstances which point the meaning of the words and the intention of the speaker.

As further illustrations: "She is sick—innuendo, she has had a child"; "she is a bad girl—innuendo, a prostitute"; "he had corn from B's farm—innuendo, that he had stolen corn from B," were held to be unwarranted, there being no inducement to support them. (Townshend on Slander and Libel, sec. 341.) The innuendo cannot perform the office of the colloquium or inducement. (Townshend on Slander and Libel, sec. 335.) It is the office of the inducement to set forth the extrinsic circumstances which, coupled with the language uttered, affects its construction and makes it actionable, where standing alone the language used would appear not to affect the plaintiff injuriously. As was said in *Taverner v. Little*, 5 Bing. N. C. 678: "Inducement is the statement of facts out of which the charge arises, or which are necessary or useful to make the charge intelligible." It has been frequently held that the inducement is necessary where the language does not naturally and *per se* convey the

meaning which the plaintiff would attribute to it and where ref-
erence to some extrinsic fact is necessary to explain it. For
example, where the language is ironical, it must be so alleged
in the inducement. (*Commonwealth v. Kneeland,* 20 Pick. 206.)

It is not material where the matters of inducement appear in
the complaint—whether before or after the statement of the
language published, although logically they should precede the
words spoken. In the complaint before us no facts by way of
inducement appear before the statement of the language used.
The only allegations that cast any light upon the meaning in-
tended to be conveyed are the following: "I have had many
other occasions to have had him arrested." As to this language
none of the witnesses to whom defendant spoke testified to hav-
ing heard it, and it may be dismissed from the case. The only
other allegation is, "I will send him where he was another time
[innuendo, state's prison]." We cannot regard this as in any
sense explaining the situation of and circumstances surrounding
the parties, or as explaining what the defendant meant by saying,
"if he continues to sell my hogs." It is alleged that the hearers
understood defendant to mean "steal my hogs," but does the
complaint disclose enough extrinsic facts from which alone to
warrant us in holding that the hearers had a right to put such
construction on the language used, or that as matter of law his
language had such meaning? We think not. It certainly can-
not be the law that a defendant must answer to the charge of
slander whenever, without reason, some bystander attributes to
his language a meaning wholly different from the natural im-
port of the language used. There should be sufficient induce-
ment alleged somewhere in the complaint from which, when
proven to be true, it would be fair and reasonable to say as mat-
ter of law that defendant intended in using the language to
charge that the plaintiff was guilty of the crime, or the act giv-
ing rise to the alleged slander.

The language "I will send him where he was before" can by
no possibility be held to mean "I will send him to state's prison,"
except it be aided by the allegation of some extrinsic facts or
circumstances, and it cannot be held to cast any light upon the
meaning of the word "sell" without some such explanation. The
complaint is wanting in allegations of any facts or circumstances

which interpret the language used, except the innuendo alone. But, as we have seen, the innuendo cannot introduce a meaning broader than the words naturally bear unless connected with proper averments.

It is manifest from the evidence as well as from the answer that the language used grew out of the relation of mortgagor and mortgagee between the parties in respect of the hogs, and from plaintiff's having sold some of these hogs. The covert allusion to the state's prison had reference no doubt to plaintiff's previous commitment. But these facts and circumstances we are asked to import into the complaint by means of the innuendo alone, which we think the rules of pleading do not warrant. The witness Levy, to whom the words were spoken, testified as to defendant's meaning: "I understood that he should not sell any hogs any more." Q. What did you understand the words to mean: "Send him where he had been before?" "A. It means Mr. Grand had the misfortune to be in state's prison, and he would send him there again." "Q. What did you understand him to mean selling the hogs? A. I understand Dreyfus had a mortgage. I knew that." He also testified that he knew plaintiff had sold some of the mortgaged hogs. "He said if he don't stop selling these hogs; the language was addressed to me." "The object was to warn Mr. Grand to discontinue selling hogs, that is how I understood it. I have been a sort of adviser for both of the parties. When Mr. Dreyfus spoke to me about this, made use of this language, he expected me to repeat it to Mr. Grand." The witness Loustalot overheard some of the conversation. He testified that the word used was "sell," but he said nothing about his knowledge of any mortgage. He had heard of plaintiff having been in state's prison before, and hence understood the language "where he had been before" to mean state's prison.

The only other witness, Daguerre, except plaintiff, testified to the language used, but was not asked as to its meaning or how he understood it. Plaintiff heard the language, but immediately stepped out of hearing. He does not testify as to its meaning. I mention this evidence because it seems to me to show the wisdom of the rule as we have given it, and to show that, failing to set out some at least of the facts as inducement or averment on

colloquium, the complaint does not state a cause of action. This view of the pleadings makes it unnecessary to pass upon other alleged errors.

The judgment should be reversed and the cause remanded.

Britt, C., and Searls, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed and the cause remanded.

Harrison, J., Garoutte, J., Van Fleet, J.