[S. F. No. 20123. In Bank. Aug. 3, 1959.]

GROVER MacLEOD, Appellant, v. TRIBUNE PUBLISHING COMPANY, INC. (a Corporation), Respondent.

Graves, Hove & MacLeod and Donald MacLeod for Appellant.

Price, Macdonald & Knox, Harry L. Price and John Charles Houlihan for Respondent.

Cosgrove, Cramer, Diether & Rindge, J. Hart Clinton, Downey, Brand, Seymour & Rohwer, Herbert E. Hall, John D. Gallaher, Cooper, White & Cooper, John J. Hamlyn, Flint & MacKay and McInerney & Jacobs as Amici Curiae on behalf of Respondent.

TRAYNOR, This appeal is from a judgment of dismissal entered after defendant's special and general demurrer to plaintiff's original complaint for libel was sustained without leave to amend. Accordingly, the issues presented are whether the complaint states a cause of action, and if not, whether there is a reasonable possibility that it could be amended to do so. (See *Lemoge Electric* v. *County of San Mateo,* 46 Cal.2d 659, 664 [297 P.2d 638]; 2 Witkin, California Procedure, Pleading, § 505, pp. 1496-1497.)

Plaintiff's complaint alleged that he is a doctor of dental surgery practicing in Oakland and that he enjoyed a good name and reputation in his profession and occupation. On April 19, 1955, defendant printed, published, and circulated in its newspaper, the Oakland Tribune, "on the front page thereof, an article or statement in writing in which said" defendant "falsely and maliciously and with intent to injure, disgrace and defame plaintiff, used and published the following language of and concerning the plaintiff:

" 'RED PAPER ISSUES ELECTION EXTRA

" 'The San Francisco People's World, recognized throughout the state as the mouthpiece of the communist party, distributed a last-minute extra edition in Oakland yesterday, on the eve of the city election.

" 'It verified reports that the paper is showing unusual interest in Oakland and its city election.

" 'The Communist-line paper defended the proposal to revive ward politics in Oakland and printed a list of recommendations which included the names of council candidates John F. Quinn, John W. Holmdahl, and Dr. Grover H. MacLeod. It also listed recommendations against police reorganization measures which were endorsed by the Alameda County Grand Jury following its recent investigation.

" 'The polls are open until 7 p.m. today.' "

Defendant "by said publication intended to be understood by the general public and readers, and it was so understood by them, as charging, asserting, and imputing that this plaintiff was a communist sympathizer or fellow traveler, and that this plaintiff had received a recommendation from 'The San Francisco People's World,' and that the said San Francisco People's World had 'distributed a last-minute extra edition in Oakland' which allegedly contained the recommendation as aforesaid, (when in truth and in fact the San Francisco People's World did not endorse or recommend plaintiff in said article), and all said charges, references, assertions, and imputations were false, malicious, and unprivileged, and were calculated to and did expose plaintiff to hatred, contempt, ridicule, and obloquy, causing him to be shunned and avoided, and proximately caused him to sustain a severe and continuing nervous shock and strain and to suffer great mental anguish, mortification, humiliation, and shame; all to his damage in the sum of $200,000.00." Plaintiff also suffered pecuniary loss in his profession as a dentist.

Plaintiff served a demand for a correction upon defendant pursuant to section 48a of the Civil Code, but no correction was made. He prayed for special, general, and exemplary damages and the costs of suit.

"Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, § 45.)

Defendant contends that plaintiff has not adequately alleged that its statement was false and that he conceded in oral argument before the trial court that he could not do so. It points out that the complaint refers to an article in the People's World, that it may be inferred that plaintiff was named therein, and that plaintiff admitted in the trial court

that the People's World printed a list of recommendations that included his name. ▮ The transcript of the oral proceedings before the trial court is not before us, however, and plaintiff's alleged admission appears only in what purports to be a brief excerpt of that transcript quoted in defendant's brief in the trial court.[1] Even if we assume that under these circumstances plaintiff's alleged admission may be considered on appeal, that admission is not a concession that the allegations of the complaint are untrue. The sting of the alleged libel is that the People's World, a communist-line paper, endorsed and recommended plaintiff for election and that therefore he was a communist sympathizer or fellow traveler.

▮ We agree with defendant, that standing alone the admission that the paper printed a list of recommendations would convey the idea that the paper recommended those listed. Plaintiff expressly alleged in his complaint, however, that "in truth and in fact the San Francisco People's World did not endorse or recommend plaintiff in said article" and that "all said charges, references, assertions, and imputations [of defendant's article] were false." In the light of these allegations, plaintiff's admission cannot be interpreted as meaning that the People's World itself recommended him, for his allegations, admitted by defendant's demurrer, preclude giving his admission that interpretation.

▮ The only reasonable interpretation of defendant's article, however, is that the People's World itself recommended plaintiff for election. The article dealt specifically with the interest being shown by the People's World in the Oakland election, it expressly pointed out that that paper defended the proposal to revive ward politics, and it contained no hint that the printed recommendations were not those of the paper itself. Defendant was reporting news, and the news value of its article lay, not in the fact that a person or persons unnamed recommended plaintiff, but in the fact that the People's World did so. Certainly no reader would reasonably assume that defendant meant no more than that the People's World had printed the recommendations of unnamed third persons or carried a political advertisement in its columns. Accordingly, the question presented is whether it

---

[1] "'THE COURT: In other words, do I understand that you deny that the paper printed a list of recommendations which included the name of the Plaintiff?

"'MR. MACLEOD [Plaintiff's counsel]: We do not deny that, your Honor.'"

is libelous falsely to charge that a candidate for city council has been recommended by a communist-line paper or the mouthpiece of the Communist Party.

This question cannot be avoided, as defendant contends, on the ground that plaintiff has denied that the People's World is a communist paper. Defendant states that plaintiff has pleaded that all of the charges in defendant's article are false. It contends that he has therefore taken the position that the People's World is not a communist paper and points out that it is not libelous to state that a person has been recommended by a noncommunist paper. This contention is patently absurd. Whether or not the People's World is "the mouthpiece of the communist party" and a "Communist-line paper," defendant so characterized it and thus informed its readers that plaintiff had communist support. The sting of this charge is present whether or not the People's World is in fact a communist paper, and accordingly, even if plaintiff has taken the position in his complaint that it is not a communist paper, he has not pleaded that defendant's article was nondefamatory. Moreover, plaintiff's allegations of falsity may reasonably be interpreted as denying only the charges as they pertained to him by imputing to him communist support and therefore communist sympathies. Although defendant may be entitled to have the complaint clarified to determine whether it must meet the issue of the character of the People's World as well as the issue whether or not it recommended plaintiff, it is obvious that an appropriate amendment would serve that purpose, and that even if plaintiff elects to allege specifically that the People's World is not a communist paper, he will not allege himself out of court.

It is just as defamatory to state that a paper that has recommended a candidate is a communist paper when it is not as to state that an admittedly communist paper recommended a candidate when it did not.[2]

---

[2] We, of course, intend to express no opinion as to whether or not the People's World is the mouthpiece of the Communist Party and a communist-line paper. Defendant in its article stated that it is, but as it interprets plaintiff's complaint, it has admitted by demurring that it is not for the purpose of testing the sufficiency of the complaint. Unless it may be judicially noticed that the People's World is a communist paper, if a cause of action is otherwise stated, plaintiff is entitled to put the character of the People's World in issue. He may plead falsity either in the characterization of the paper, the statement of whom it recommended, or both. If it were judicially noticed, however, that the People's World is a communist paper, any allegation in the complaint to the contrary

■ Whatever the rule may have been when anticommunist sentiment was less crystallized than it is today (see *Harris* v. *Curtis Publishing Co.*, 49 Cal.App.2d 340, 348 [121 P.2d 761]; *Gallagher* v. *Chevalas*, 48 Cal.App.2d 52, 59 [119 P.2d 408]), it is now settled that a charge of membership in the Communist Party or communist affiliation or sympathy is libelous on its face. (*Farr* v. *Bramblett*, 132 Cal.App.2d 36, 48 [281 P.2d 372]; *Utah State Farm Bureau Federation* v. *National Farmers U.S. Corp.*, 198 F.2d 20, 23; *Grant* v. *Reader's Digest Ass'n*, 151 F.2d 733, 734; see also *Black* v. *Cutter Laboratories*, 43 Cal.2d 788, 800 [278 P.2d 905]; Prosser, Torts [2d ed.] 578; Yankwich, *Certainty in the Law of Defamation*, 1 U.C.L.A. L. Rev. 163, 168; note, 33 A.L.R.2d 1196, 1212.) ■ Plaintiff alleged that defendant's article was intended to be and was understood as charging that he was a communist sympathizer or fellow traveler. Whether or not the article is reasonably susceptible of this interpretation is a question for the court and, if so, whether or not it was so understood is a question for the jury. (*Maher* v. *Devlin*, 203 Cal. 270, 278 [263 P. 812]; *Mellen* v. *Times-Mirror Co.*, 167 Cal. 587, 593 [140 P. 277, Ann.Cas. 1915C 766]; *Keenan* v. *Dean*, 134 Cal.App.2d 189, 195 [285 P.2d 300]; *Gallagher* v. *Chevalas*, 48 Cal.App.2d 52, 58 [119 P.2d 408].)

■ "The code definition of libel is very broad and has been held to include almost any language which, upon its face, has a natural tendency to injure a person's reputation, either generally, or with respect to his occupation. (*Schomberg* v. *Walker*, 132 Cal. 224 [64 P. 290]; *Stevens* v. *Snow*, 191 Cal. 58, 62 [214 P. 968]; *Tonini* v. *Cevasco*, 114 Cal. 266, 272 [46 P. 103].) ■ In the determination of this question, the alleged libelous publication is to be construed 'as well from the expressions used, as from the whole scope and apparent object of the writer.' (*Stevens* v. *Storke*, 191 Cal. 329, 334 [216 P. 371, 373]; *Bettner* v. *Holt*, 70 Cal. 270 [11 P. 713, 715].) The case last above cited states that 'not only is the language employed to be regarded with reference to the actual words used, but according to the sense and meaning under all the circumstances attending the publication which such language may fairly be presumed to have conveyed to those to

---

would have to be disregarded (see 2 Witkin, California Procedure, Pleading, § 208, pp. 1185-1186), and the whole basis of defendant's untenable contention that plaintiff has pleaded that the article was innocent because he pleaded that the People's World is not a communist paper would collapse.

whom it was published. So that in such cases the language is uniformly to be regarded with what has been its effect, actual or presumed, and its sense is to be arrived at with the help of the cause and the occasion of its publication. And in passing upon the sufficiency of such language as stating a cause of action, a court is to place itself in the situation of the hearer or reader, and determine the sense or meaning of the language of the complaint for libelous publication according to its natural and popular construction.' ▮ That is to say, the publication is to be measured not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader. ▮ A defendant is liable for what is insinuated, as well as for what is stated explicitly. (*Schomberg* v. *Walker, supra,* p. 227.)'' (*Bates* v. *Campbell,* 213 Cal. 438, 441-442 [2 P.2d 383].)

▮ Measured by the foregoing tests, defendant's article may reasonably be interpreted as charging that plaintiff was a communist sympathizer or fellow traveler. It is true that Communists may support those who do not sympathize with them. They may even support openly those they secretly oppose for the very purpose of tainting their opponents with their own unpopularity and thus aiding in their defeat. Ordinarily, however, persons, groups, or parties support candidates who are in sympathy with their objectives, and candidates are judged at least in part by those who support them. Indeed the relevance of plaintiff's supporters to his fitness for public office is basic to defendant's contention, discussed later, that its article was privileged. Its article was published on the day of the election and pointed out that the polls were yet to close. It contained no hint or suggestion that the communist recommendations were not to be taken or should not be taken to mean that communist support reflected communist sympathies of those supported. Certainly few if any of defendant's readers would conclude that defendant printed the article to assist plaintiff's election, nor would they be likely to view it as a purely neutral gesture. Under the circumstances they might reasonably infer that defendant intended to charge that plaintiff was unworthy of public office because he was a communist sympathizer. A reasonable jury could find that defendant clearly so insinuated.

Defendant contends, however, that since its article is also susceptible of an innocent interpretation, it is not libelous on

its face, that therefore an allegation of special damages is essential, and that plaintiff's allegations of special damages are insufficient. (See Civ. Code, § 45a.)

Section 48a of the Civil Code provides that special damages "are all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other; . . ." Plaintiff alleged that as a result of the libel he "has suffered pecuniary loss in his profession as a dentist" in that an "unusually large percentage of old and established patients have been cancelling appointments," and there "has been a sharp decline in the number of new patients normally to be expected. Plaintiff does not at this time know the exact extent of pecuniary loss resulting from the foregoing, but is informed and believes, and therefore alleges, that said loss is a continuing one, and that the amount of said loss will be in the sum of $5,000.00 or more; and plaintiff prays leave of Court to amend this allegation to insert the true amount of said loss when the same becomes known to him." These allegations are sufficient. The losses stated are included in the statutory definition, they are described with sufficient particularity to enable defendant to prepare its defense, and under the circumstances stated the extent of the loss may be alleged on information and belief. (*Pridonoff* v. *Balokovich,* 36 Cal.2d 788, 792-793 [228 P. 2d 6].)

In any event, defendant's article is libelous on its face even if it is susceptible of the innocent interpretation that communist support does not reflect communist sympathy on the part of the person supported. At common law any written defamation or libel was actionable without proof of special damages (see Rest., Torts, § 569; Prosser, Torts [2d ed.] 587). In *Tonini* v. *Cevasco,* 114 Cal. 266 [46 P. 103], however, this court recognized a limitation on the common-law rule when the defamatory meaning of the language used is not apparent on its face. "It is only when the libelous meaning of the publication is *covert*—not apparent on the face of the language used—that averment and proof of special damage is required." (114 Cal. at p. 271.) The limitation was further elucidated in *Schomberg* v. *Walker,* 132 Cal. 224, 227-228 [64 P. 290]. "To constitute a libel it is not necessary that there be, a direct and specific allegation of improper conduct, as in a pleading. The charge may be either

expressly stated or implied; and in the latter case the implication may be either apparent from the language used, or of such a character as to require the statement and proof of extrinsic facts (*inducement, colloquium,* and *innuendo*) to show its meaning. In the last case, proper allegations and proofs of the facts necessary to make the meaning of the language apparent will be required. Otherwise, whether the charge be directly made or merely implied, the publication—without *averment, colloquium,* or *innuendo*—will, in itself, constitute a libel. 'The construction which it behooves a court of justice to put on a publication which is alleged to be libelous is to be derived as well as from the expressions used as from the whole scope and apparent object of the writer.' (*Cooper* v. *Greeley,* 1 Denio, 358.) Thus in the case cited, the charge was not 'made in an open and direct manner'; 'but,' it was said by the court, 'an imputation made in that form is not the less actionable.' ''

In 1945 the Legislature codified the rule of the Tonini and Schomberg cases by enacting section 45a of the Civil Code, which provides:

''A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof. Special damages is defined in section 48a of this code.''

When section 45a is read in the light of the Schomberg case it is clear that language may be libelous on its face even though it may also be susceptible of an innocent interpretation. The test is whether a defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts. If it does, ''whether the charge be directly made or merely implied, the publication— without *averment, colloquium,* or *innuendo*—will, in itself, constitute a libel.''

The fact that an implied defamatory charge or insinuation leaves room for an innocent interpretation as well does not establish that the defamatory meaning does not appear from the language itself. The language used may give rise to conflicting inferences as to the meaning intended, but when it is addressed to the public at large, it is reasonable to assume that at least some of the readers will take it in its defamatory sense. (See Spiegel, *Defamation by Implication,* 29

So.Cal.L.Rev. 306, 312.) In *Peabody* v. *Barham*, 52 Cal.App. 2d 581 [126 P.2d 668], however, the court overlooked this fact. In that case the defendant printed the statement that "Eddie Peabody's divorcing wife, ten years his senior, is also his aunt!" The plaintiff was Eddie Peabody's "divorcing wife," and she contended that the language charged her with incest. Although more charitably minded readers might assume that the plaintiff was the widow of Eddie's deceased uncle and not a blood relative, certainly a jury could reasonably infer from the publication of the language itself that many readers would understand it in a defamatory sense. Nevertheless, the court held that because of the possible innocent meaning of the language used, it was not defamatory on its face and that therefore proof of special damages was essential. The Schomberg case was not cited.

 The purpose of the rule requiring proof of special damages when the defamatory meaning does not appear on the face of the language used is to protect publishers who make statements innocent in themselves that are defamatory only because of extrinsic facts known to the reader. For example, a newspaper might erroneously report that "Mrs. *A* gave birth to a child last night." Mrs. *A* has been married only a month. The language used will take on a defamatory meaning only to those who know when Mrs. *A* was married, and many of them will also know that the paper made a mistake. In such a case, general damages for loss of reputation may be trivial, and the paper's mistake may have been innocent, for the content of its report would not alert it to the possibility of defamation. It is not unreasonable therefore to require proof of special damages to establish a cause of action. The case would be entirely different, however, if the paper reported that "Mrs. *A*, who was married last month, gave birth to a child last night." A charge of immoral conduct is apparent to all from the language used, and the paper knows and is fully warned of the defamatory implication. Under the rule of the Peabody case, however, it would escape liability unless special damages are proved, for the language used does not exclude the innocent possibility that Mrs. *A* was widowed or divorced a few months before her recent marriage and that the child is that of her former husband.

 Such hair-splitting analysis of language has no place in the law of defamation, dealing as it does with the impact of communications between ordinary human beings.

It is inconsistent with the rule that "the publication is to be measured not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader." (*Bates* v. *Campbell*, 213 Cal. 438, 442 [2 P.2d 383].) It protects, not the innocent defamer whose words are libelous only because of facts unknown to him, but the clever writer versed in the law of defamation who deliberately casts a grossly defamatory imputation in ambiguous language. It not only finds no support in, but is contrary to, the provisions of section 45a, which define, not language susceptible of only one meaning, but language that carries *a* defamatory meaning on its face. It would be a reproach to the law to hold that a defendant intent on destroying the reputation of a political opponent by falsely labeling him a Communist or communist sympathizer could achieve his purpose without liability by casting his defamatory language in the form of an insinuation that left room for an unintended innocent meaning. When as in this case, it can be reasonably inferred from the language used that defendant intended to charge plaintiff with communist sympathies and that many readers so interpreted its article, and defendant has admitted by demurring that such was its intent and the meaning placed on its article, it ill befits defendant to contend that it should escape liability on the ground that owing to a possible innocent meaning some of its readers did not draw the defamatory inference it intended that they should.

The possible-innocent-meaning rule of the Peabody case was repeated in a dictum in *Washer* v. *Bank of America*, 21 Cal.2d 822, 828 [136 P.2d 297, 155 A.L.R. 1338], and it has been followed or repeated in subsequent District Courts of Appeal decisions. (See *Babcock* v. *McClatchy Newspapers*, 82 Cal. App.2d 528, 538 [186 P.2d 737]; *Smith* v. *Los Angeles Bookbinders Union*, 133 Cal.App.2d 486, 493 [284 P.2d 194]; *Menefee* v. *Codman*, 155 Cal.App.2d 396, 405 [317 P.2d 1032]; *Jeffers* v. *Screen Extras Guild*, 162 Cal.App.2d 717, 730 [328 P.2d 1030].) To the extent these cases are inconsistent with our conclusion herein they are disapproved.

Since it appears from the complaint that plaintiff was a candidate for public office and that defendant's article reported facts relevant to his qualifications, defendant contends that the article was privileged (see Civ. Code, § 47, subd. 3; *Snively* v. *Record Publishing Co.*, 185 Cal. 565, 571 [198 P.

1]) and that plaintiff's allegations of malice are insufficient to defeat the privilege. (See *Locke* v. *Mitchell*, 7 Cal.2d 599, 602 [61 P.2d 922]; *Harnish* v. *Smith*, 138 Cal.App.2d 307, 310 [291 P.2d 532]; *Glenn* v. *Gibson*, 75 Cal.App.2d 649, 660-661 [171 P.2d 118]; *Irwin* v. *Newby*, 102 Cal.App. 110, 113 [282 P. 810, 283 P. 370].) ▓▓ Plaintiff alleged that defendant published the article "falsely and maliciously and with intent to injure, disgrace, and defame plaintiff," and that "all said charges, references, assertions, and imputations were false, malicious, and unprivileged, and were calculated to and did expose plaintiff to hatred, contempt, ridicule, and obloquy." Similar allegations of malice have been held sufficient when coupled with allegations that defendant published its article with knowledge of its falsity or without an honest belief in its truth. (*Washer* v. *Bank of America*, 21 Cal.2d 822, 831 [136 P.2d 297, 155 A.L.R. 1338]; *Morcom* v. *San Francisco Shopping News*, 4 Cal.App.2d 284, 289 [40 P.2d 940]; see also *Tingley* v. *Times Mirror*, 151 Cal. 1, 14 [89 P. 1097].) The privilege is also lost if defendant had no reasonable grounds for believing his statement to be true. (*Brewer* v. *Second Baptist Church*, 32 Cal.2d 791, 797 [197 P.2d 713]; *Emde* v. *San Joaquin etc. Council*, 23 Cal.2d 146, 154 [143 P.2d 20, 150 A.L.R. 916]; *Miles* v. *Rosenthal*, 90 Cal. App. 390, 407 [266 P. 320]; see Restatement, Torts, § 601; Prosser, Torts [2d ed.] 628.) ▓▓ Although plaintiff has not specifically alleged that defendant knew that its article was false, had no honest belief in its truth, or had no reasonable grounds for believing it to be true, under the circumstances of this case one or more of these grounds for defeating the qualified privilege are implicit in the allegation that defendant's article was false. Thus, with a copy of the People's World election extra before it or readily available, defendant should have had no difficulty in accurately reporting the extra's recommendations. Defendant's failure to do so indicates at least a lack of reasonable grounds for its report. Such failure is also consistent with a lack of honest belief or intentional falsehood on defendant's part.[3] Any defect in failing expressly to plead one or more of these bases for

---

[3]We assume in making these comments that the People's World printed an election extra, and that plaintiff only intended to plead that the paper did not endorse him. Of course, if we interpret his complaint as denying the truth of all of the facts stated in defendant's article, as alleging, in effect, that the article was entirely fabricated, an inferential allegation of bad faith or intentional falsehood would be inescapable.

defeating the qualified privilege could easily be cured by amendment.

Section 48a of the Civil Code provides in part:

"In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that the same be corrected. . . ."

Defendant contends that plaintiff's demand for a correction was insufficient and that therefore he has not stated a cause of action for general or exemplary damages. Plaintiff wrote defendant's publisher as follows:

"I wish to call your attention to a purported news report which appeared in the Oakland Tribune on Tuesday, April 19, 1955, in all editions on Page 1 of your publication. The article reads as follows:

"[Entire article set out in 17 typewritten lines.]

"This article is grossly libelous and I therefore demand that the same be corrected or retracted as provided in Section 48(a) of the Civil Code of the State of California."

Defendant contends that plaintiff did not adequately specify "the statements claimed to be libelous" so as to permit it intelligently to comply with his demand. It relies on *Anderson* v. *Hearst Publishing Co.,* 120 F.Supp. 850. In that case, however, defendant published a lengthy article of three columns by ten inches in which there were eight references to the plaintiff. His demand for correction stated that "Your issue of November 24th, 1952, carried, under the by-line of Westbrook Pegler, certain statements regarding me which are untrue, libelous and damaging. . . ." The demand for retraction was held insufficient on the ground that plaintiff had failed to specify which of the "certain statements" he deemed libelous. In the present case, on the contrary, the article was short, it was set out in plaintiff's demand, and it made only one reference to him. By stating that the article was "grossly libelous" and demanding a correction or retraction pursuant to section 48a, plaintiff made clear that he was objecting to the statement that referred to him, namely, that a communist-line paper had printed a list of recommendations including his name. Moreover, that statement was libelous on its face.

We cannot believe that defendant was so unaware of the significance of what it printed that it did not realize what language plaintiff objected to and wished corrected. Plaintiff gave defendant fair notice and adequately specified "the statements claimed to be libelous." (Civ. Code, § 48a; *Uhlman* v. *Farm Stock & Home Co.*, 126 Minn. 239, 242 [148 N.W. 102, Ann.Cas. 1915D 888].)

For the reasons stated the trial court erred in sustaining the demurrer without leave to amend. As indicated in our discussion, however, there are certain allegations that could be clarified or more explicitly stated. Moreover, the complaint may be subject to other grounds stated in the special demurrer but not urged on appeal. ▮ The trial court may in its discretion require clarification of any uncertainties or ambiguities. (*Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713, 720 [128 P.2d 522, 141 A.L.R. 1358].)

The judgment is reversed.

Gibson, C. J., Schauer, J., and Dooling, J. pro tem.,* concurred.

McCOMB, J.—I dissent. It is my view that Canon 19 of Judicial Ethics of the American Bar Association relative to dissenting opinions is in the public interest and should be carefully adhered to by reviewing courts. Insofar as material here, it reads: "Except in case of *conscientious difference of opinion on fundamental principle,* dissenting opinions should be discouraged in courts of last resort." (Vol. 62, Reports of American Bar Association (1937), p. 1129, canon 19.) (Italics added.)[1]

In the present case I conscientiously differ from the conclusions and reasoning of the majority opinion. It is my view that one of the most important duties of the judiciary is to maintain the freedom of the press. Article I, section 9, of the Constitution of the State of California reads, in part: "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." The First Amendment to the Constitution of the United States reads, in part: "Congress shall

*Assigned by Chairman of Judicial Council.

[1]My views relative to dissenting opinions will be found in *Priebe* v. *Sinclair*, 90 Cal.App.2d 79, at p. 87 [202 P.2d 577].

make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press.''

I state that it is one of the most important duties of the judiciary to maintain the freedom of the press, for the reason that it is my belief that a free and independent government can only be preserved by maintaining a well-informed electorate. History has demonstrated that the best method of keeping the citizenry informed is through the medium of the press. It is my considered opinion that the free press' foremost obligation is to advise the electorate of all the qualifications or disqualifications of each candidate for public office, which obviously includes his party affiliations, be they communist or otherwise, his associates, the individuals, organizations and groups by whom he is endorsed and who are seeking his election to public office.

In my opinion, in the present case the defendant has merely, within the constitutional guarantee, endeavored to comply with the public duty it owed to the citizenry concerning a candidate for public office.

Plaintiff was a candidate for the City Council of Oakland at the April 1955 election. Thereafter he filed a complaint against defendant, Tribune Publishing Co., Inc., alleging that he was a doctor of dental surgery practicing in Oakland and that prior to the publication in the Oakland Tribune hereinafter set forth, he enjoyed a good name and reputation in his profession and occupation.

It was further alleged:

''That on the 19th day of April, 1955, in all the editions of said newspaper, defendants printed, published, and circulated, or caused to be printed, published, and circulated in said newspaper, on the front page thereof, an article or statement in writing in which said defendants falsely and maliciously and with intent to injure, disgrace, and defame plaintiff, used and published the following language of and concerning the plaintiff:

'RED PAPER ISSUES ELECTION EXTRA

'The San Francisco People's World, recognized throughout the state as the mouthpiece of the communist party, distributed a last-minute extra edition in Oakland yesterday, on the eve of the city election.

'It verified reports that the paper is showing unusual interest in Oakland and its city election.

'The Communist-line paper defended the proposal to revive ward politics in Oakland and printed a list of recommendations which included the names of council candidates John F. Quinn, John W. Holmdahl, and Dr. Grover H. MacLeod. It also listed recommendations against police reorganization measures which were endorsed by the Alameda County Grand Jury following its recent investigation.

'The polls are open until 7 p.m. today.'

"That said article and publication was read by the readers of said newspaper at said time and on said occasion in the city of Oakland and in the County of Alameda and throughout the State of California; and that said defendants by said publication intended to be understood by the general public and readers, and it was so understood by them, as charging, asserting, and imputing that this plaintiff was a communist sympathizer or fellow traveler, and that this plaintiff had received a recommendation from 'The San Francisco People's World,' and that the said San Francisco People's World had 'distributed a last-minute extra edition in Oakland' which allegedly contained the recommendation as aforesaid, (when in truth and in fact The San Francisco People's World did not endorse or recommend plaintiff in said article), and all said charges, references, assertions, and imputations were false, malicious, and unprivileged, and were calculated to and did expose plaintiff to hatred, contempt, ridicule, and obloquy, causing him to be shunned and avoided, and proximately caused him to sustain a severe and continuing nervous shock and strain and to suffer great mental anguish, mortification, humiliation, and shame; all to his damage in the sum of $200,000.00."

As a result of the publication of the article, plaintiff alleges that he has suffered pecuniary loss, in that an unusually large percentage of old and established patients have been cancelling appointments and that there has been a sharp decline in the number of new patients normally to be expected.

It was also averred that plaintiff served on defendant a demand for retraction, as provided in section 48a of the Civil Code, but that defendant failed and refused to publish a retraction. The alleged demand, a copy of which was attached to the complaint, reads:

April 27, 1955

J. R. Knowland
Publisher, Oakland Tribune
Tribune Tower
Oakland, California

Dear Mr. Knowland:

I wish to call your attention to a purported news report which appeared in the Oakland Tribune on Tuesday, April 19, 1955, in all editions on Page 1 of your publication. The article reads as follows:

"RED PAPER ISSUES ELECTION EXTRA

"The San Francisco People's World, recognized throughout the State as the mouthpiece of the communist party, distributed a last-minute extra edition in Oakland yesterday, on the eve of the city election.

"It verified reports that the paper is showing unusual interest in Oakland and its city election. The communist-line paper defended the proposal to revive ward politics in Oakland and printed a list of recommendations which included the names of council candidates John F. Quinn, John W. Holmdahl and Dr. Grover H. MacLeod. It also listed recommendations against police reorganization measures which were endorsed by the Alameda County Grand Jury following its recent investigation.

"The polls are open until 7 p.m. today."

This article is grossly libelous and I therefore demand that the same be corrected or retracted as provided in Section 48(a) of the Civil Code of the State of California.

> Very truly yours,
> s/ Grover H. MacLeod, D.D.S.
> GROVER H. MACLEOD, D.D.S.

GHM/mjn

The prayer of the complaint was for special damages in the sum of $5,000, general damages of $200,000 and exemplary damages of $200,000.

These questions are presented:

First. *Did the complaint state a cause of action?*

*No*, for the following reasons:

1. The article printed by defendant was not libelous as to

plaintiff, since the only statement concerning him he concedes to be true.[2]

The sole statement concerning plaintiff is that the San Francisco People's World printed a list of recommendations for candidates for the City Council of Oakland and plaintiff's name was included thereon.

The law is established in California that there is no libel if the charge against the plaintiff is true, irrespective of the wording used by the defendant in making the charge. (*Emde* v. *San Joaquin County etc. Council,* 23 Cal.2d 146, 160 [8] [143 P.2d 20, 150 A.L.R. 916]; *Babcock* v. *McClatchy Newspapers,* 82 Cal.App.2d 528, 536 [186 P.2d 737]; *Glenn* v. *Gibson,* 75 Cal.App.2d 649, 661 [6] [171 P.2d 118]; *McLaughlin* v. *Standard Acc. Ins. Co.,* 15 Cal.App.2d 558, 566 [59 P.2d 631].)

The gist of the charge against plaintiff is that the San Francisco People's World printed a list of recommendations for the office of councilman of the city of Oakland, which list included plaintiff's name. Therefore, since it is conceded that the charge was true, defendant is exempt from liability. (*Emde* v. *San Joaquin County etc. Council, supra,* p. 160.)

2. The article printed by defendant is not libelous because, under plaintiff's own statement, there is no libelous matter in the alleged defamatory article.

The substance of the article is that the San Francisco People's World, a San Francisco mouthpiece of the Communist Party, issued an election extra on the eve of a city election in Oakland showing an unusual interest in an Oakland city election; defended the proposal to revive ward politics in Oakland; printed a list of recommendations for the city council, which list included plaintiff's name; and listed recommendations against certain police reorganization measures endorsed by the grand jury. The article further stated the hours when the polls would be open. Plaintiff, at the hearing on the demurrer and in this court, has taken the position that all of the Tribune article is false.[3]

---

[2]At the time of the argument, the following colloquy between the court and plaintiff's counsel occurred:

"The Court: In other words, do I understand that you deny that the paper printed a list of recommendations which included the name of the Plaintiff?

"Mr. MacLeod: We do not deny that, your Honor."

[3]Plaintiff, in his opening brief, p. 13, states that he "takes the position that all of said article is false, and he has so pleaded in his complaint."

Plaintiff is confronted with this dilemma:

(a) If it is assumed, as plaintiff unequivocally contends, that all of the Tribune article is false, then he asserts the San Francisco People's World is not a communistic newspaper. For the purposes of the demurrer, the trial court properly assumed this to be the fact.

The charge concerning plaintiff in the article is the single statement that the San Francisco People's World printed a list of recommendations which included the names of council candidates, among others that of plaintiff. Accordingly, the gist of the alleged defamatory matter is that the San Francisco People's World, declared noncommunistic by plaintiff, printed a list of recommendations for the city council, among which plaintiff's name was included.

Obviously, there is no defamatory sting in the statement concerning plaintiff. The meaning of the charge is plain. He is not accused of wrongdoing of any kind; in fact, he is not accused of doing anything. A third party, a San Francisco newspaper, is charged with printing his name along with those of two others as recommended candidates.

Plaintiff, a candidate for councilman, is not defamed by a statement that he is one of three who were recommended for the office of city councilman. To say that a candidate for public office in one city has been recommended by a newspaper published in another city is no more than saying that the candidate, without any solicitation on his part, has received support from a source which he believes will not help him politically. The fact that a publication is unpleasant or hostile does not make it actionable. (*Mortensen* v. *Los Angeles Examiner*, 112 Cal.App. 194, 202 [2] [296 P. 927].)

It is established law that it is not libelous to accuse one of doing a legal act, even though strong epithets are used in describing the act. (*Sullivan* v. *Warner Bros. Theatres, Inc.*, 42 Cal.App.2d 660, 663 [5] [109 P.2d 760] [hearing denied by the Supreme Court].) It is also established that in every actionable defamation it is necessary that there be defamation apparent from the words themselves, for no innuendo can alter their sense. (*Emde* v. *San Joaquin County etc. Council*, supra, p. 159 [7]; *Grand* v. *Dreyfus*, 122 Cal. 58, 62 [54 P. 389].)

The complaint here fails to show any defamation apparent from the words themselves. The words used concerning plaintiff are simple and clear and do not defame. Charging that a candidate for public office received a recommendation from

a source which he believes will injure him in his political campaign may offend him, but where, as here, he is not charged with anything other than having received the recommendation and he concedes that fact to be true, it does not libel him. Clearly, therefore, it was not defamatory to charge truthfully that a noncommunistic newspaper printed a list of recommended candidates in which plaintiff's name was included.

Counsel for defendant in oral argument aptly illustrated the point that the article was not libelous *per se*, as follows: "I wonder if it can be said that the man in the street believes that Franklin Delano Roosevelt was a Communist, or a Communist sympathizer, or a Communist Fellow-Traveler——

"The Chief Justice: Some do.

"Mr. Houlihan: ——simply because he was endorsed, if you please, which is more than we said in the publication, by the Communist Party in publications; by reason of the treatment that he received at the hands of the Communist press, the most favorable treatment, can it be said that any type of statement of that kind leaves the man in the street with the exclusive conviction that Franklin Delano Roosevelt was a Communist or a Communist sympathizer, or a Communist Fellow-Traveler? That is the kind of construction that is forbidden by all of the decisions of this Court and the District Court of Appeal, in determining whether or not the language is libelous per se, because when we get into strained construction we confess the existence of a covert meaning, and the covert meaning is not what we are looking for in a libel per se case."

In connection with the foregoing statement, the words of Mr. Chief Justice Gibson, speaking for this court in *Communist Party v. Peek*, 20 Cal.2d 536, 547 [127 P.2d 889], are here pertinent. He said: "Not only do plaintiffs vigorously assert that the Communist Party does not advocate force and violence, but the decided cases have definitely demonstrated that the fact here alleged to exist is not the subject of judicial notice. In *State v. Reeves*, 5 Wn.2d 637 [106 P.2d 729, 130 A.L.R. 1465], the attorney general of Washington urged, as do defendants here, that the Communist Party should be kept off the ballot and that the courts could take judicial knowledge of the fact that the party advocated force and violence. The Supreme Court refused to take judicial notice of that fact for the reason that the litigants denied it. Furthermore, it was said, if the court in the election case were to make a

judicial finding on the question it would be tantamount to holding all registered communists were guilty of violating the criminal syndicalism act in the absence of evidence on the question. The court pointed out that the cases relied upon by the attorney general in that case (as are most of the cases relied upon by defendants) dealt with the deportation of aliens, and were cases reviewing an administrative record which did not involve judicial notice at all. In *Ex parte Fierstein*, 41 F.2d 53, a similar contention was made before the Ninth Circuit Court of Appeals. There the court reversed an order of deportation which had been predicated on proof the alien was a communist. Judge Wilbur, speaking for a unanimous court, held that the court could not take judicial notice of the fact that the Communist Party advocates force and violence, and that the order could not stand in the absence of evidence of that fact. Referring to some of the cases relied upon by defendants in the present case, the court stated (p. 54): 'While the character of this organization has frequently been considered by the court, and in some very recent cases, *Whitney* v. *California*, 274 U.S. 357 [47 S.Ct. 641, 71 L.Ed. 1095]; *Antolish* v. *Paul* (C.C.A.), 283 Fed. 957; *Skeffington* v. *Katzeff*, 277 Fed. 129; *Ex parte Jurgans* (D.C.), 17 F.2d 507, the decisions in these cases are based upon the evidence adduced before the court with reference to the character of this organization, and the statements made in the opinions of the court with reference to that organization are based upon the testimony before the court, and in no instance has the court attempted to take judicial notice of the character of this organization.'

"None of the cases cited compels a contrary conclusion. Most, if not all, of the federal cases relied upon did not involve the question of judicial notice at all. They were cases involving reviews of determinations by the Department of Labor, which by law is vested with fact-finding power and whose determinations were predicated on evidence. These cases were so distinguished in the Reeves and Fierstein cases, *supra*. In the case of *In re Coon*, 44 Cal.App.2d 531 [112 P.2d 767], the appellate court did state (p. 543): 'It is a matter of common knowledge that the Communist Party comes within that category'—that is, within the group that advocates and practices the overthrow of government by subversive activities. The statement was not only dictum, but it had no reference to the doctrine of judicial knowledge which was not involved in the case. The same can be said

of *Field* v. *Hall*, 201 Ark. 77 [143 S.W.2d 567]. As was pointed out in the Reeves case, *supra*, to hold that this court will take judicial notice of the alleged fact that the Communist Party advocates force and violence, without any evidence of that fact, would not only require judicial notice of a fact which plaintiffs and their counsel vehemently deny, but it would also necessitate a finding that every registered communist is a felon and could be convicted of a violation of our criminal syndicalist law upon mere proof of membership in the Communist Party. That is not the law.''

(b) If, on the other hand, it is assumed, contrary to plaintiff's claim, that the People's World is a communistic publication, we find there was a charge that a communistic newspaper printed recommendations favoring measures which were not communistic and recommendations favoring plaintiff as a candidate. There is no clear meaning from this charge that plaintiff was a communist.

In *Harris v. Curtis Publishing Co.*, 49 Cal.App.2d 340, 345 [3] et seq. [121 P.2d 761], a charge that many in the plaintiff's community were communists, contained in an article which severely criticized the plaintiff and others for their radical policies as officeholders, was held not to be defamatory as to the plaintiff even though in the article there were veiled inferences of communistic connections and it was probably intended to imply that the plaintiff was one of the communist group. The charge was held to lack the required certainty of having a clear meaning that the plaintiff was a communist.

Even though a defamatory implication is shown upon the face of a publication, if it is also subject to innocent interpretation the language is said to be equivocal, and the publication thereof is not libelous *per se*. (*Washer* v. *Bank of America*, 21 Cal.2d 822, 828 [2] [136 P.2d 297, 155 A.L.R. 1338]; *Babcock* v. *McClatchy Newspapers, supra*, p. 534 [3]; *Peabody* v. *Barham*, 52 Cal.App.2d 581, 584 [3] [126 P.2d 668] [hearing denied by the Supreme Court].)

Under either assumption of fact, the article did not charge that plaintiff was a communist, and it was therefore not libelous.

3. Plaintiff cannot by innuendo allegations make libelous a nondefamatory, simple statement which is not libelous.

Plaintiff has admitted the truth of the gist of the charge, to wit, the printing of a list by a San Francisco newspaper, and since there was no defamatory sting in the statement concerning plaintiff, there was no libel.

The rule is settled that where the words of a charge are not libelous according to their common usage, the pleader will not be allowed to change or enlarge their meaning so as to make such words libelous. (*Emde* v. *San Joaquin County etc. Council, supra,* p. 159 [7]; *Jackson* v. *Underwriters' Report, Inc.,* 21 Cal.App.2d 591, 597 [6] [69 P.2d 878]; *Vedovi* v. *Watson & Taylor,* 104 Cal.App. 80, 88 [7] [285 P. 418] [hearing denied by the Supreme Court]; *cf. Peabody* v. *Barham, supra,* p. 584 [3].)

Applying the foregoing rules to the facts of the present case, it is apparent that the words of the article published by defendant do not have a defamatory meaning when reasonably interpreted; therefore, they are not libelous. The language of the charge is as simple, plain and commonplace as language can be. Nothing is hidden or concealed in the words. They are admittedly true. Reasonably interpreted, they convey no defamatory meaning. Plaintiff, by innuendo, has attempted to alter the sense of simple, ordinary, unambiguous, truthful words to make defamatory language that is not defamatory. Under the above stated rules he cannot do this.

Second. *Was the article published by defendant "fair comment"?*

*Yes.* Mere expressions of opinion or severe criticism are not libelous if they clearly go only to the merits or demerits of a condition, cause or controversy which is under public scrutiny, even though they may reflect adversely upon the political activities or fitness for office of an individual who is intimately connected with the principal object of the attack. (*Howard* v. *Southern Calif. etc. Newspapers,* 95 Cal. App.2d 580, 584 [3] [213 P.2d 399]; *Babcock* v. *McClatchy Newspapers, supra,* p. 535 [6]; *Eva* v. *Smith,* 89 Cal.App. 324, 328 [2] et seq. [264 P. 803]; *cf. Glenn* v. *Gibson, supra,* p. 659 [4]; *Gosewisch* v. *Doran,* 161 Cal. 511, 514 [119 P. 656, Ann.Cas. 1913D 442].)

From the article published, it appears that it was the aim of defendant to emphasize what it said was an unusual occurrence—the great interest shown by a San Francisco newspaper in an Oakland city election. It appeared that at this election the people were to vote on police reorganization measures which had been endorsed by the Alameda County Grand Jury, a proposal to revive ward politics in Oakland, and the election of members of the city council. The article stated that a San Francisco newspaper immediately before

the election defended the proposal to revive ward politics in Oakland, printed a list of recommendations, which included the name of plaintiff, and also listed recommendations against the police reorganization measures. The language of the article was mild, dignified and tempered and was devoid of epithets and vituperative, scurrilous or abusive statements. Malversation on the part of plaintiff was not charged.

The article called attention to the fact that it was unusual for a San Francisco newspaper to print recommendations on what defendant regarded as purely local issues at a local election in another city. Obviously, the issues referred to in the article were matters of public interest. The article dealt with an opinion on how the people should vote on measures and candidates. The cause which was under public scrutiny related to the merits and demerits of measures and candidates. Defendant was here calling to public attention the fact that a San Francisco newspaper was opposing the recommendations of the Alameda County Grand Jury and favoring a measure to restore the ward system in the city of Oakland.

Defendant deemed that it was in the public interest to oppose the views of the San Francisco newspaper.

It might be implied from the article that since the recommendations printed by the San Francisco newspaper were unsound as to important measures, they were probably equally unsound when applied to candidates.

The article was one by which defendant sought to convey pertinent information to the public on matters of public interest, and it is obvious that it did not exceed the limits of fair comment.

The rule is thus stated in *Howard* v. *Southern Calif. etc. Newspapers, supra,* p. 584: "Publications by which it is sought to convey pertinent information to the public in matters of public interest are permitted wide latitude. In controversies of a political nature, in particular, the circumstances often relieve statements, which might otherwise be actionable, of possible defamatory imputations. Mere expressions of opinion or severe criticism are not libelous if they clearly go only to the merits or demerits of a condition, cause or controversy which is under public scrutiny, even though they may adversely reflect upon the public activities or fitness for office of individuals who are intimately connected with the principal object of the attack."

In the present case the article was fair comment, made in a

political contest dealing with matters of public concern, where a broad area of discussion is permitted without civil responsibility for damages.

Third. *Was plaintiff's demand for a retraction effectual?*

*No.* Section 48a of the Civil Code provides, in part: "In any action for damages for the publication of a libel in a newspaper . . . plaintiff shall recover no more than special damages unless a correction be demanded and be not published . . . as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication . . . a written notice *specifying the statements claimed to be libelous* and demanding that the same be corrected. Said notice and demand must be served within 20 days after knowledge of the publication . . . of the statements claimed to be libelous." (Italics added.)

The demand for a retraction is ineffectual unless it specifies the statements claimed to be libelous. (*Anderson* v. *Hearst Publishing Co.,* 120 F.Supp. 850, 852 et seq.) In the present case plaintiff's demand for a retraction was ineffectual because it *failed to specify* the statements claimed to be libelous.

Plaintiff has repeatedly asserted that he meant by his pleading that *all* the statements in the defendant's article were false and libelous. As pointed out above, if *all* the statements were untrue, there is no possibility of plaintiff's having been libeled, because it is obvious that a statement that a candidate received a recommendation from a noncommunist newspaper is not defamatory.

Faced with the knowledge that plaintiff claimed that *all* the statements in defendant's article were false, defendant could neither retract nor determine what it was expected to retract. Defendant could not retract its statement that the San Francisco People's World printed a list of recommendations containing plaintiff's name, because that statement is true, as plaintiff admits. Defendant could not retract its statement that the San Francisco People's World was a communist newspaper, or if it had retracted such statement in response to plaintiff's claim that it was untrue, such action would not have benefited plaintiff. Defendant could not have been expected to retract any of the other statements in the article, because such statements were alleged by plaintiff to be true.

Defendant, engaged in "complex and far-flung activities," is not required to retract true statements or to guess what statements plaintiff desired retracted, in view of the require-

ment of the statute that plaintiff *specify* the statements claimed to be libelous.

Fourth. *Was plaintiff's demand for special damages valid?*

*No.* The rule is established that when special damage is claimed, the nature of the loss or injury must be particularly set forth. It is necessary that the declaration set forth precisely in what way the special damage resulted. (*Anderson* v. *Hearst Publishing Co., supra,* p. 852; *Pollard* v. *Lyon,* 91 U.S. 225, 237 [23 L.Ed. 308]; *Peabody* v. *Barham, supra,* p. 585 [6]; *Shook* v. *Pearson,* 99 Cal.App.2d 348, 351 [4] [221 P.2d 757].)

*Oberkotter* v. *Woolman,* 187 Cal. 500 [202 P. 669], relied on by plaintiff, is not applicable, for the reason that in such case no special demurrer was directed to the lack of particularity of allegations of special damages, while in the present case there was such a special demurrer.

Fifth. *Did the trial court err in sustaining the demurrer without leave to amend?*

*No.* The defects in the complaint could not be cured by amendment, for these reasons:

1. The gist of the statement complained of is true. It is true that the San Francisco People's World printed a list of recommendations of candidates in which plaintiff's name was included. Obviously, plaintiff cannot amend by now claiming as false what he has pleaded and expressly admitted to be true. Where, as here, the gist of the charge is true, there is no libel. Since plaintiff cannot amend to plead that the gist of the charge is false, this defect cannot be cured by amendment.

2. Defendant's statements are not defamatory. Plaintiff, by taking the position that all the article is false, in effect takes the position that the portion of the article stating that the San Francisco People's World is a communist paper is false. It is likewise obvious that there is no defamation or libel in stating that a noncommunistic newspaper printed an endorsement of plaintiff. Plaintiff cannot amend to remedy this defect or change a position which he has taken throughout the entire litigation. It is clearly not defamatory to charge that a candidate received an unsolicited recommendation from a newspaper—be it communistic or noncommunistic—and the meaning of such charge cannot be enlarged or changed so as to make it defamatory. Plaintiff, by the use of innuendo, cannot state a cause of action.

3. The complaint shows that defendant's statements were

fair comment, for the article was one which contained its mildly expressed views on the measures and candidates in a municipal election. Plaintiff cannot amend to show that the fair comment privilege did not apply, nor can he amend to show actual malice, since pleading of actual malice would require an allegation that defendant, in making its statement, knew or should have known the charge to be false. Plaintiff cannot allege that defendant knew or should have known the statement to be false, for the reason that the statement was true, as plaintiff admits.

Since plaintiff could not plead a cause of action through amending his complaint, the court properly sustained the demurrer without leave to amend.

I would affirm the judgment.

SPENCE, J.—I dissent. In view of plaintiff's concession in the trial court that the People's World had, as stated in defendant's article, ''printed a list of recommendations which included the name of plaintiff,'' I am in agreement with the conclusion reached by Mr. Justice McComb that the judgment should be affirmed.

Respondent's petition for a rehearing was denied August 31, 1959. Peters, J., did not participate therein. Spence, J., and McComb, J., were of the opinion that the petition should be granted.